WILLIAM F. WILSON, PLAINTIFF-RESPONDENT, v. AN-
DREW FAULL, DEFENDANT-APPELLANT.

Argued March 17, 1958—Decided May 19, 1958.

*Mr. Benjamin Asbell* argued the cause for the plaintiff-respondent.

*Mr. Carl Kisselman* argued the cause for the defendant-appellant (*Messrs. Kisselman, Devine & Deighan,* attorneys).

The opinion of the court was delivered by

PROCTOR, J. The primary issue presented on this appeal is one of choice of law between the workmen's compensation acts of New Jersey and Pennsylvania which deal differently with the right of an injured employee of a subcontractor to maintain a common law negligence action against a general contractor, where each state has a legitimate interest in the work-injury.

The plaintiff, William F. Wilson, was employed in New Jersey, where he resided, by J. W. Tragle of Haddonfield, New Jersey. The defendant, Andrew Faull, who resides in and maintains a place of business in New Jersey, entered into a contract in Pennsylvania with the owner of a building in Philadelphia to make certain repairs and improvements upon the building. The defendant then subcontracted with Tragle, by an agreement made in New Jersey, for the latter to supply and install a cornice on the building, the defendant agreeing to erect a scaffold on the job-site for Tragle's employees. The plaintiff while working at the Philadelphia job-site was injured when he fell from the scaffold erected by defendant. The defendant provided workmen's compensa-

tion insurance for plaintiff's benefit under the Pennsylvania compensation law. Tragle carried workmen's compensation insurance for plaintiff's benefit under the New Jersey act.

 Under the Pennsylvania workmen's compensation act "an employer who permits the entry, upon premises occupied by him or under his control, of a laborer or an assistant hired by an employer or contractor [the word contractor being defined in *section* 25 of the act as to include a subcontractor to whom a principal contractor has sublet any part of the work which such principal contractor has undertaken], for the performance upon such premises of a part of the employer's regular business entrusted to that employee or contractor, shall be conclusively presumed to have agreed to pay such laborer or assistant compensation" in accordance with the act, and such laborer or assistant is "conclusively presumed to have agreed to accept [it]" unless the employer posts upon the premises a notice of intention not to pay such compensation or the laborer elects not to accept such compensation by written notice to the employer. *Purdon's Pa. Stat. Annot., Tit.* 77, *section* 462 (1952). Acceptance of the provisions of *section* 462 by the parties operates as a surrender of their rights "to any form or amount of compensation or damage for any injury or death occurring in the course of the employment, or to any method of determination thereof," other than as provided in the act. *Purdon, op. cit., supra, sec.* 481. It is undisputed that none of the parties took any action designed to prevent the provisions of *section* 462 from applying and that the injury occurred in the performance of a part of defendant's regular business upon premises under his control. It is clear, therefore, that the plaintiff was a statutory employee and the defendant was a statutory employer within the provisions of the Pennsylvania statute.

 Under the Pennsylvania statute the general contractor is substituted for the subcontractor for compensation purposes and is deemed to enter into an employer-employee relationship with the employees of a subcontractor who are working on premises under the general contractor's control.

The general contractor, as such a statutory employer, then becomes absolutely liable for the payment of compensation benefits to a subcontractor's employees, and in return is granted employer's immunity from common law liability for negligence. *Swartz v. Conradis,* 298 *Pa.* 343, 148 *A.* 529 (*Sup. Ct.* 1929). This immunity continues even in the event a subcontractor expressly consents to assume compensation liability. *Capozzoli v. Stone & Webster Engineering Corp.,* 352 *Pa.* 183, 42 *A. 2d* 524 (*Sup. Ct.* 1945).

The New Jersey compensation law treats the problem of the general contractor's liability in. a somewhat different manner. A general contractor is liable for the payment of compensation to employees of a subcontractor only in the event that the subcontractor has failed to secure workmen's compensation insurance. In the event the general contractor becomes liable for compensation payments he is granted a right of reimbursement from the derelict subcontractor. *N. J. S. A.* 34:15–79. Where the subcontractor takes out compensation insurance, as in the present case, the general contractor is treated as a third party and is not granted immunity from a common law negligence suit by an employee of a subcontractor. *Corbett v. Starrett Bros.,* 105 *N. J. L.* 228 (*E. & A.* 1928). Under the provisions of *N. J. S. A.* 34:15–40 the employee's common law right to maintain a suit for damages against third-party tortfeasors is preserved. The employee's right to compensation benefits does not operate as a bar to such an action. This section also subrogates the employer or his insurance carrier to the employee's claim against a third-party tortfeasor to the extent of medical expenses incurred and compensation benefits paid to the employee. Thus, under the New Jersey act a general contractor is treated as a third party subject to a common law tort action by the employees of a subcontractor, at least where the subcontractor has taken out compensation insurance. See *Corbett v. Starrett, supra.*

Plaintiff obtained an award of workmen's compensation benefits in New Jersey, pursuant to the New Jersey compensation act, against Tragle, his immediate employer.

Plaintiff then instituted the present common law action in New Jersey, seeking to recover damages for the injuries sustained as a result of the defendant's alleged negligence in the construction and maintenance of the scaffold. The defendant interposed the defense that the law of Pennsylvania, the state of the injury, was applicable and that under the law of that state the plaintiff was barred from maintaining a suit for damages against the defendant. The defendant contended that under the circumstances in which plaintiff was injured the defendant was a "statutory employer" who, under the Pennsylvania compensation act, is granted immunity from common law suits for negligence by "statutory employees" such as plaintiff, in exchange for the imposition of absolute liability for the payment of workmen's compensation benefits to such "statutory employees." Upon the filing of an agreed stipulation of facts, including those recited above, the defendant moved for summary judgment. The trial court granted the defendant's motion after finding that the law of Pennsylvania, the place of the injury, controlled plaintiff's right to maintain a tort action against defendant. Upon appeal, the Appellate Division reversed the judgment holding that the law of New Jersey, which permits the plaintiff's action, applied. The court stated that from a choice of law viewpoint the substantive field involved was not tort law, but rather "that of the regulation of employment relations," and that since "the significance of the *situs* of the accident here in question is substantially outweighed by the significance of the contacts with [New Jersey] wherein contractor, employer-subcontractor and employee resided, where the first two had their regular place of business, where the employment relationship was originally created and where the contractor and the plaintiff's employer contracted for the doing of the work at which plaintiff sustained his injury," New Jersey is the state "whose law should be applied here as the state having the preponderance of significant contacts with the employment relationship involved." 45 *N. J. Super.* 555 (1957). We granted certification on defendant's motion. 25 *N. J.* 53 (1957).

On this appeal, the defendant contends that since the plaintiff's suit is a common law tort action "it is axiomatic that the law of the place of the injury governs the substantive aspects of a tort action" and that the full faith and credit clause of the Federal Constitution requires New Jersey to recognize the applicable law of Pennsylvania. He points out that the imposition upon him of absolute liability for the payment of compensation benefits to a subcontractor's employees under the Pennsylvania statute forms the *quid pro quo* for his purchase of immunity from common law actions by a statutory employee, such as the plaintiff. He concludes that when the plaintiff "asserts a tort claim against the defendant for a work injury received in Pennsylvania, he takes his cause of action as it exists in Pennsylvania, together with the defense of immunity to negligence actions which the laws of that state provide." On the other hand, the plaintiff asserts that tort principles are not apposite to his claim, since the defense raised to bar his action springs from Pennsylvania's compensation act and not from the substantive tort law of that state. He argues that the Pennsylvania compensation act is not controlling since compensation law is a law of status and as such must be deemed to be in the substantive field of "employment relations" rather than tort law. He concludes that a proper application of conflict of laws rules would give controlling weight to the law of New Jersey, which is the state which has "the preponderance of significant contacts" with the employment relation.

The problem presented here where the compensation statutes of two states deal differently with the plaintiff's right to maintain a common law tort action is not simply one of classification of the substantive field involved. The classification of the plaintiff's claim as one involving "tort law" or "contract law" or "employment relations law," with the consequence that the court need then only mechanically apply the respective choice of law rule, *i. e.,* the law of the state of the injury, or of the state where the employment contract was entered into, or of the state with the most

significant contacts with the employment relation, does not in our opinion provide a satisfactory choice of law rule where the employee is not claiming compensation benefits but is instead seeking to maintain a common law tort action.

 Workmen's compensation laws were designed to provide an expeditious and certain remedy for employees who sustain work injuries by the statutory imposition of absolute but limited and determinate liability upon the employer, *Cardillo v. Liberty Mutual Insurance Co.*, 330 *U. S.* 469, 67 *S. Ct.* 801, 91 *L. Ed.* 1028 (1947); *Sexton v. Newark District Telegraph Co.*, 84 *N. J. L.* 85 (*Sup. Ct.* 1913). These laws generally provide that the compensation remedy is exclusive. The theory behind this exclusiveness is that the laws provide predictable compensation for any on the job injury. They represent a compromise that inures to the ultimate benefit of both employer and employee. The employee surrenders his right to seek damages in an action at law in return for swift recovery independent of proof of fault. The employer gives up common law defenses to negligence suits and assumes an absolute liability to provide compensation; in return he is granted immunity from common law negligence suits by his employees. See *United States Casualty Co. v. Hercules Powder Co.*, 4 *N. J.* 157 (1950).

██ While a variety of circumstances could operate to provide more than one state with a legitimate interest in the redress of a work-connected injury, the typical conflict of laws problem arises where an employee is injured in one state, but resides in or is employed in another state, and he seeks a remedy in either the state of the injury or the state of the contract or the state of the employment relation. If the injured employee is seeking a compensation remedy, application by the forum of its compensation law, whether it be the state of the injury or the state of the contract or the state of the employment relation, does no violence to the basic principles of workmen's compensation. The employee is provided a prompt and certain recovery and the employer's liability is limited to that provided by the com-

pensation law of the forum, which has a sufficient interest in the work-injury to justify the application of its own law. Nor is there any constitutional impediment to the forum's application of its own compensation law, whether the forum be the state of the injury, *Pacific Employers Insurance Co. v. Industrial Accident Comm.,* 306 *U. S.* 493, 59 *S. Ct.* 629, 83 *L. Ed.* 940 (1938), or the state of contract or employment relation, *Alaska Packers Ass'n v. Industrial Accident Comm.,* 294 *U. S.* 532, 55 *S. Ct.* 518, 79 *L. Ed.* 1044 (1935); *Cardillo v. Liberty Mutual Insurance Co., supra,* notwithstanding that the compensation law of another interested state purports to provide an exclusive remedy. The fact that an injury occurs within the state or that the employment contract was made in that state is deemed a sufficient interest to satisfy the full faith and credit clause. 2 *Larson, Workmen's Compensation,* § 86 (1952); *Clark, "Work Injuries and the Constitution: Carroll v. Lanza," Wash. Univ. L. Q.* 320, 328–329 (1956); *Comment,* 23 *Univ. of Chic. L. Rev.,* 515, 531 (1956); *Case Note,* 67 *Harv. L. Rev.,* 1281, 1282 (1954); *Case Note,* 106 *Univ. of Pa. L. Rev.,* 472, 474 (1958).

██ However, where the injured employee seeks to maintain a common law tort action against his employer in one of two or more states having a legitimate interest in the work-injury, the forum has almost invariably applied the law of the state in which the employer has provided compensation insurance and whose law granted such employer immunity from common law negligence actions by the employee, and dismissed the suit. *Jonathan Woodner Co. v. Mather,* 93 *U. S. App. D. C.* 234, 210 *F. 2d* 868, 873 (*D. C. Cir.* 1954), *certiorari* denied 348 *U. S.* 824, 75 *S. Ct.* 39, 99 *L. Ed.* 650 (1954), citing 2 *Larson, Workmen's Compensation Law,* § 88.10 (1952); *Dwan, "Workmen's Compensation and Conflict of Laws,"* 11 *Minn. L. Rev.* 329, 347 (1927); *Dwan, "Workmen's Compensation and the Conflict of Laws,"* 20 *Minn. L. Rev.* 19, 33–34 (1935). This choice of law has been made by the state of the forum, whether it was the state of the injury, *Barnhart v. American Concrete*

*Steel Co.,* 227 *N. Y.* 531, 125 *N. E.* 675 (*Ct. App.* 1920); *Orleans Dredging Co. v. Frazie,* 179 *Miss.* 188, 173 *So.* 431 (*Sup. Ct.* 1937); *Scott v. White Eagle Oil and Refining Co.,* 47 *F. 2d* 615 (*D. C. D. Kan.* 1930); *Bagnel v. Springfield Sand & Tile Co.,* 144 *F. 2d* 65 (1 *Cir.* 1944), or the state of contract, *Mitchell v. J. A. Tobin Const. Co.,* 236 *Mo. App.* 910, 159 *S. W. 2d* 709 (*App. Ct.* 1942); *Mitchell v. St. Louis Smelting & Refining Co.,* 202 *Mo. App.* 251, 215 *S. W.* 506 (*App. Ct.* 1919); *Johnson v. Nelson,* 128 *Minn.* 158, 150 *N. W.* 620 (*Sup. Ct.* 1915); *Yoshi Ogino v. Black,* 278 *App. Div.* 146, 104 *N. Y. S. 2d* 82 (*App. Div.* 1951), affirmed 304 *N. Y.* 872, 109 *N. E. 2d* 884 (*Ct. App.* 1952); *Anderson v. Miller Scrap Iron Co.,* 169 *Wis.* 106, 170 *N. W.* 275, 171 *N. W.* 935 (*Sup. Ct.* 1919); *Logan v. Missouri Valley Bridge & Iron Co.,* 157 *Ark.* 528, 249 *S. W.* 21 (*Sup. Ct.* 1923); *Bozo v. Central Coal & Coke Co.,* 57 *Utah* 243, 193 *P.* 1111 (*Sup. Ct.* 1920); *Hockmuth v. Perkins,* 55 *Ga. App.* 649, 191 *S. E.* 156 (*Sup. Ct.* 1937), or the state of employment relation, *Willingham v. Eastern Airlines,* 199 *F. 2d* 623 (2 *Cir.* 1952); *Jewtraw v. Hartford Accident & Indemnity Co.,* 280 *App. Div.* 150, 112 *N. Y. S. 2d* 727 (*App. Div.* 1952); *Severson v. Hanford Tri-State Airlines,* 105 *F. 2d* 622 (8 *Cir.* 1939), *certiorari* denied 309 *U. S.* 660, 60 *S. Ct.* 514, 84 *L. Ed.* 1008 (1940). See also *Magnolia Petroleum Co. v. Turner,* 188 *Ark.* 177, 65 *S. W. 2d* 1 (*Sup. Ct.* 1933); *Christ v. Chicago & N. W. Ry Co.,* 176 *Minn.* 592, 224 *N. W.* 247 (*Sup. Ct.* 1929); *Pendar v. H. & B. American Mach. Co.,* 35 *R. I.* 321, 87 *A.* 1, *L. R. A.* 1916*A,* 428 (*Sup. Ct.* 1913). *Contra, Johnson v. Carolina C. & O. Ry. Co.,* 191 *N. C.* 75, 131 *S. E.* 390 (*Sup. Ct.* 1926). This almost universal recognition by the forum of the compensation law of a sister state which grants immunity to an employer who has provided compensation insurance for an employee, irrespective of the interest of the state of the forum, cannot be said to be the result of an inflexible or mechanical application by the forum of "tort," "contract" or "employment relation" conflict of laws principles. Instead, the recognition of the

law of a sister state in this situation reflects the basic philosophy underlying the adoption of workmen's compensation acts by the several states as the exclusive remedy for industrial accidents. The court in *Jonathan Woodner Co. v. Malher, supra,* stated its concept of the rationale underlying the forum's recognition of another state's compensation law where the employee sought common law damages and the defense interposed was that the law of another state in which the employer had provided compensation coverage barred such an action, as follows in 210 *F. 2d* at *page* 873:

"The rationale underlying these cases, though not articulated, seems clear. The employer has incurred the burden of providing workmen's compensation insurance. The employee has foregone his right to sue the employer for negligence. But both have also gained. The employer has gained an immunity from common law suit. The employee has gained a right to relief even where his injury did not arise through the fault of his employer. The courts clearly consider that this system of mutual give and take would be upset if the employee could sue for negligence in another jurisdiction."

Where an injured employee sues his employer for damages in the state of the injury, and the law of the state of contract or employment relation bars such an action, Professor Larson states the following reason for the forum's choice of the law of the state of contract or employment relation:

"* * * the local state may reserve the right to apply its own statute in order to insure that its *benefits* are conferred on an employee for when it does this, no irremediable harm can possibly ensue to either of the parties. This refusal to enforce the affirmative benefits of the foreign compensation act hurts no one, for if rights exist thereunder they are not less enforcible in the foreign state after the first award than before. But if the defenses created by the foreign state are not enforced, irremediable harm to the employer is the result. Because of this distinction, then, a foreign exclusive remedy defense to common law suits against the employer will usually be honored, although on the same facts, the benefits of the foreign act would be required to give way to the benefits of the local act, if the employee chose to pursue his compensation rights locally." 2 *Larson, op. cit., supra,* § 88.10 (1952).

We think this reasoning would apply with equal force where the employee sues his employer for damages in the

state of contract or employment relation and the compensation law of the state of the injury bars such an action.

There is no constitutional impediment to the choice of law in this manner. The case of *Carroll v. Lanza,* 349 *U. S.* 408, 75 *S. Ct.* 804, 99 *L. Ed.* 1183 (1955), relied on by the plaintiff, held that insofar as the full faith and credit clause is concerned it does not make a material difference that a common law action, rather than a claim for compensation, is asserted by an employee. While *Lanza* indicates what a state may do in disregard of a law of a sister state, without violating the full faith and credit clause, it does not purport to formulate a "choice of law" rule as to what a state should do in that regard. The court left open to each state the ultimate decision as to choice of law when it said:

> "Missouri can make her Compensation Act exclusive, if she chooses, and enforce it as she pleases within her borders. Once that policy is extended into other States, different considerations come into play. Arkansas can adopt Missouri's policy if she likes. Or, as the Pacific Employers Insurance Co. case teaches, she may supplement it or displace it with another, insofar as remedies for acts occurring within her boundaries are concerned." 349 *U. S.* at *page* 413, 75 *S. Ct.* at *page* 807, 99 *L. Ed.* at *page* 1189.

Moreover, the *Lanza* case did not involve a suit by an employee against his employer or against a person who was required to provide compensation benefits. *Cf. Bradford Electric Light Co. v. Clapper,* 286 *U. S.* 145, 52 *S. Ct.* 571, 76 *L. Ed.* 1026, 82 *A. L. R.* 696 (1931).

As the authorities previously cited indicate, a material difference is discernible in the selection of the appropriate law where the claim is one for common law damage. Fundamental compensation policy dictates that where an employer is required to provide compensation benefits by the law of the state having a legitimate interest in a work-injury, under which the injured employee could claim a compensation remedy against the employer, the state of the forum should recognize the correlative immunity conferred upon such an employer by the law of the foreign state.

The question remains whether this reasoning applies with equal force when an injured employee of a subcontractor brings a common law negligence action in the state of contract or employment relation against a general contractor, who, under the compensation law of the state of the injury is substituted for the immediate employer for compensation purposes.

This question was squarely presented in *Jonathan Woodner Co. v. Mather, supra,* on facts strikingly similar to those in the case *sub judice.* In that case the plaintiff, Mather, was employed in the District of Columbia, where he resided, by the Colonial Electric Company. He was injured while working on a construction project in Maryland. The defendant, Jonathan Woodner Company, was the general contractor on the project. The Colonial Electric Company was a subcontractor. Under Maryland's compensation law a general contractor is required to provide compensation insurance for the employees of his subcontractors and in return is relieved from common law liability to such employees. Under the District of Columbia's compensation law the general contractor is liable for the payment of compensation to employees of a subcontractor only if the subcontractor failed to carry compensation insurance. The court assumed that under the District's compensation law that where only a subcontractor had compensation insurance the general contractor remains subject to common law liability to the employees of a subcontractor. Colonial Electric Company had workmen's compensation insurance for Mather's benefit under both the Maryland and the District of Columbia compensation acts. The Jonathan Woodner Company had compensation insurance under the Maryland act. Mather, however, did not claim compensation under either act. Instead, he sued the Jonathan Woodner Company, the general contractor, for negligence in the District of Columbia and recovered a judgment for damages in the trial court. The Court of Appeals reversed the judgment, holding that the compensation law of Maryland, which barred the action, applied. The court, while alluding to the general conflict

rules governing tort actions, declined to base its holding on the ground that the law of the place of the injury was controlling. See *Tucker v. Texas Co.*, 203 *F.* 2d 918 (5 *Cir.* 1953); *Parker v. Zanghi*, 45 *N. J. Super.* 167 (*App. Div.* 1957); *Restatement, Conflict of Laws*, § 401 (1948 *Supp.*); 2 *Beale, Conflict of Laws*, § 378.1 (1935). Instead, its decision was grounded on the principle that "in an employee-employer suit, if some workmen's compensation act purports to bar the action, that bar will be applied in the forum." The court concluded that this principle which underlies the forum's denial of a common law recovery against an immediate employer was equally applicable to a suit against a general contractor. The court said in 210 *F.* 2d at *page* 874:

"As we have no legislative or judicial policy against the application of the bar of the Maryland Act, that bar should prevail. The principles of the employee-employer cases apply here, for although this case differs from them in some respects it is essentially like them. Jonathan Woodner Company was not the immediate employer of Mather. Yet it was required by the law of the state where the work was done and where the injury occurred to provide compensation insurance. Mather also had his immediate employer to look to for compensation. Yet it was unquestionably of advantage to him for the principal contractor to be obliged to participate for his benefit in the workmen's compensation system of Maryland. As in the ordinary employee-employer situation, therefore, a balance was struck. Both employee and principal contractor are in some ways damaged and in other ways benefited by the Maryland Act. If the employee were allowed to sue for damages in another jurisdiction, in cases where the Maryland Act could apply, this balance would be upset."

We think the rule announced in the *Woodner* case is sound. The basis for the court's conclusion was that there is no substantial difference between an immediate employer-subcontractor who is obligated to provide compensation coverage for his employees, and a general contractor, who, under the law of the state of the injury, is substituted in the employment relation for the immediate employer and becomes primarily liable for workmen's compensation to the employees of the immediate employer. In this aspect the

analogy between the position of the general contractor in the employment relation and that of the subcontractor is complete. The employees of the subcontractor unquestionably are benefited by the imposition of compensation liability upon the general contractor. Since there is almost universal recognition of a sister state's grant of immunity to an immediate employer, who is required to provide compensation, that policy, from a choice of law viewpoint, should be equally applicable where the general contractor is effectively substituted for the immediate employer for compensation purposes, unless to do so would be contrary to the public policy of New Jersey.

Application of the Pennsylvania law in this situation is not obnoxious to our public policy. The fundamental principle of workmen's compensation, as mentioned above, is certainty of remedy for the injured employee and absolute but limited and determinate liability for the person designated to provide compensation. This principle remains unaltered irrespective of the person designated to bear the compensation liability, whether he be called an employer, statutory employer, general contractor or anything else. See 2 *Larson*, §§ 72.31, 72.50. While New Jersey imposes primary compensation liability upon the subcontractor, and Pennsylvania imposes primary compensation liability upon the general contractor, both persons have the obligation to provide compensation coverage within the framework of the respective acts. The general contractor under the Pennsylvania act is as much an employer for compensation purposes as is the subcontractor under the New Jersey act, and on principles of comity we should give full effect to the law of Pennsylvania which grants him immunity from common law liability. *Cf. Stacy v. Greenberg*, 9 *N. J.* 390 (1952). The considerations that underlie the grant of immunity to a person who provides compensation benefits are not lessened by a mere difference between the Law of New Jersey and that of Pennsylvania in the designation of the person who must bear that responsibility. Mere differences in law do not connote differences in public policy. See *Buzzone v.*

*Hartford Accident & Indemnity Company,* 23 *N. J.* 447 (1957); *cf. Bowers v. American Bridge Co.,* 43 *N. J. Super.* 48 (*App. Div.* 1956). The difference between these laws does not warrant a refusal to respect the Pennsylvania compensation law. Pennsylvania seeks to effectuate the same basic compensation policy as New Jersey—certainty of remedy and absolute but limited and determinate liability.

Choice of law in the situation presented here should not be governed by wholly fortuitous circumstances such as where the injury occurred, or where the contract of employment was executed, or where the parties resided or maintained their places of business, or any combination of these "contacts." Rather, it should be founded on broader considerations of basic compensation policy which the conflicting laws call into play, with a view toward achieving a certainty of result and effecting fairness between the parties within the framework of that policy. The injured workman has a prompt and practical compensation remedy in any state having a legitimate interest in his welfare. The person who provides that compensation in an interested state has a definitive liability which is predictable with some degree of accuracy and is granted an immunity from an employee's suit for damages which does not disappear whenever his enterprise chances to cross state lines and the suit is brought in another state. "The main *desideratum* should be certainty so that employers may arrange insurance and other matters accordingly, and so that needless litigation may be prevented." *Dwan,* 11 *Minn. L. Rev., supra,* at *page* 352. Such a rule would in no way affect the right of a state to grant an injured employee *benefits* under its own compensation system where the state of the forum has a legitimate interest in the work-injury. See *Gotkin v. Weinberg,* 2 *N. J.* 305 (1949). This was in fact done in the present case. These considerations lead us to conclude that the compensation law of Pennsylvania should be selected to govern the plaintiff's action. That law bars his action.

New Jersey's compensation policy which gives Tragle or his insurance carrier rights in the nature of subrogation

to the plaintiff's rights against a third party does not transcend the policy considerations which command recognition of the defendant's immunity as an employer under the Pennsylvania law. The rights of Tragle or his insurance carrier to maintain a common law tort action can rise no higher than the plaintiff's right to maintain such an action. The question of whether Tragle or his insurance carrier may be able to maintain an action against the defendant for reimbursement to the extent of compensation payments made to the plaintiff is not before us and does not require comment.

The choice of law here made is not contrary to that made in *Stacy v. Greenberg*, 9 *N. J.* 390 (1952), upon which the plaintiff relies. The *Stacy* case is distinguishable on its facts. There the plaintiffs, who resided and were employed in New York by a New York corporation, were injured through the alleged negligence of the defendant, a co-employee, while driving through New Jersey enroute to New York from an employment assignment in Pennsylvania. The plaintiffs instituted a common law negligence suit in New Jersey. Under the New York compensation act, an employee who is injured in the course of his employment is denied the right to sue a co-employee for negligently causing such an injury. Under the New Jersey act such a suit is not precluded. This court held that since the plaintiffs' "contact with our State was purely casual," the New Jersey compensation law was not applicable and that inasmuch as the New York law was not obnoxious to our public policy, principles of comity required that our courts give effect to the New York compensation law. The case did not involve a common law suit by an employee against a person who had provided compensation coverage as in the present case. Significantly, the court stated that "the complex problem of the application of conflicting workmen's compensation acts to an accident with which two or more states may have some legitimate concern" was not present.

The judgment of the Appellate Division is reversed and the judgment of the trial court is reinstated.

WEINTRAUB, C. J. (concurring). I agree with the result reached in the majority opinion but would place it upon another ground.

The accident happened in Pennsylvania. A cause of action for negligence could arise only under its law. We may not project our law into another jurisdiction and thereby create such liability where that other jurisdiction holds there is none.

We are not dealing with the right of an employee against his actual employer. In that area it is settled that the state of employment and the state of accident may each enforce its own workmen's compensation program. Defendant was not in fact the employer of plaintiff, and was not a party to plaintiff's employment by the subcontractor in New Jersey. Nor is the claim here advanced one for compensation benefits under our statute, as to which a general contractor may be responsible under circumstances not here present. R. S. 34:15–79. Our statute preserves (it does not create) third-party liability for negligence. R. S. 34:15–3; R. S. 34:15–40. I see no basis in our statute or case law for a holding that the execution of a subcontract in this State subjects the general contractor to our tort law with respect to accidental injury of an employee of a subcontractor outside our jurisdiction.

Hence the pivotal question, in my view, is whether the cause of action here asserted came into being under the law of Pennsylvania. Defendant argues that the cause of action did arise in that state, subject to a "defense" defendant might plead, i. e., that its liability is confined to the payment of benefits under the statutory scheme of that state. Upon this thesis, plaintiff says the question is whether we would recognize a "defense" created by Pennsylvania law and in that inquiry should use an interest-weighing approach. I think it sufficient to say that this two-step analysis of the Pennsylvania law is artificial, and no less so because as a matter of practice and pleading a defendant may have to advance facts which show the alleged cause of action did

not arise. The effect of the Pennsylvania statute is that upon the total facts no liability for negligence came into being.

WEINTRAUB, C. J., concurring in result.

*For reversal*—Chief Justice WEINTRAUB, and Justices HEHER, WACHENFELD, BURLING, JACOBS, FRANCIS and PROCTOR—7.

*For affirmance*—None.