CLIFFORD A. EGER AND MILDRED A. EGER, HIS WIFE, PLAINTIFFS-APPELLANTS, v. E.I. DU PONT DENEMOURS COMPANY, DEFENDANT-RESPONDENT.

Argued October 26, 1987—Decided April 20, 1988.

*William D. Levinson* argued the cause for appellant (*Levinson, Conover, Axelrod, Wheaton & Grayzel,* attorneys; *Robert E. Bennett,* on the brief).

*John P. Dwyer* argued the cause for respondent (*Carpenter, Bennett & Morrissey,* attorneys; *Stephen F. Payerle,* on the brief).

The opinion of the Court was delivered by

HANDLER, J.

Clifford Eger, a New Jersey resident, worked as a draftsman for Allstates Design and Development Co., Inc. (Allstates), a New Jersey corporation, from 1964 until 1983. During this time, E.I. du Pont DeNemours & Co. (Du Pont) hired Allstates as a subcontractor to provide various design, drafting, and model building services in connection with Du Pont's operation of the Savannah River Nuclear Plant, a South Carolina facility owned by the United States Department of Energy, which manufactures radioactive isotopes for defense and industrial uses.

On various occasions over the course of his nineteen-year employment with Allstates, Eger was sent to the Savannah

River facility to perform certain tasks in connection with his development of particular designs to suit engineering specifications provided by Du Pont. Plaintiffs allege that on one or more of his trips to the Savannah River facility, Eger was exposed to radioactivity that caused him to contract acute myeloblastic leukemia, a form of leukemia known to be caused by exposure to radiation and certain toxic chemicals.

Due to his illness, Eger left Allstates in July of 1983. Prior to his departure, in March of 1983, Eger filed a workers' compensation action in New Jersey against Allstates. Subsequently, in April of 1984, Eger and his wife, Mildred, brought a third-party tort action against Du Pont and Allstates, the hospital and doctors responsible for Du Pont's screening program, and various chemical companies. The plaintiffs have since dismissed without prejudice the common-law actions against Allstates and the chemical companies.

Du Pont moved for summary judgment, claiming that as the statutory employer of Eger under the South Carolina workers' compensation act, it was immune from common-law tort liability. The Law Division granted this motion. On appeal by the plaintiffs, directed to Du Pont only, in a *per curiam* unpublished opinion, the Appellate Division affirmed the trial court's ruling. We granted plaintiffs' petition for certification, 107 *N.J.* 634 (1987), and now affirm the judgment of the Appellate Division.[1]

I.

There is a difference in the role of a general contractor in the workers' compensation systems of New Jersey and South

---

[1] We express no opinion as to plaintiffs' ability to maintain such a suit if it had been alleged that Du Pont's conduct towards Eger amounted to an "intentional wrong." *See Millison v. E.I. du Pont de Nemours & Co.*, 101 *N.J.* 161, 182 (1985) (fraudulent concealment of employees' work-related illness was an intentional wrong not subject to the exclusive remedy provision of the workers' compensation statute).

Carolina. In New Jersey, the rights and duties defined by the workers' compensation statute arise out of the employment contract between the employee and his immediate employer. The employer, unless adequately self-insured, is required to purchase workers' compensation insurance providing benefits in accord with a statutory schedule for all injuries arising out of and in the course of employment regardless of the fault of the employer. *N.J.S.A.* 34:15-7. In return for the employer assuming the burden of providing this coverage, the employee surrenders the right to pursue any other remedy against the employer, thus immunizing the employer from tort liability. *N.J.S.A.* 34:15-8. General contractors, however, are not parties to the employment contract between a subcontractor and its employees. They are therefore not required to provide workers' compensation coverage, and do not enjoy the immediate employer's immunity from tort liability. *Corbett v. Starrett Bros*, 105 *N.J.L.* 228, 231 (E. & A. 1928). While a general contractor may be called on to provide workers' compensation to the employee of a subcontractor that has violated its statutory obligation to provide workers' compensation coverage, *N.J.S.A.* 34:15-79, this secondary liability is imposed to ensure that a worker has some source of recovery, and to provide an incentive for general contractors to place work with insured subcontractors; it has no bearing on the tort liability of a general contractor to a subcontractor's employee. *See, e.g., Boehm v. Witte*, 95 *N.J.Super.* 359, 366 (Law Div.1967).

Under South Carolina law, however, a general contractor is equated with a workers' immediate employer for the purposes of workers' compensation. *S.C.Code* § 42-1-430. Thus, an injured employee of a subcontractor can sue either the subcontractor, the immediate employer, or the general contractor, the statutory employer, for workers' compensation, *S.C.Code* § 42-1-450, and the general contractor is required to provide coverage for the employees of its subcontractors as if they were its own employees. *S.C.Code* § 42-1-410. Although provision is made for general contractors to shift the ultimate

responsibility for compensation expenses onto an insured sub-contractor, *S.C.Code* § 42-1-440, general contractors in South Carolina, unless self-insured, must nevertheless carry insurance providing primary compensation coverage, and thus are accorded the same immunity from tort liability as immediate employers. *S.C.Code* § 42-1-540; *see Parker v. Williams & Madjanik*, 275 *S.C.* 65, 70-72, 267 *S.E.*2d 524, 527 (1980) (a workers' compensation claim is the only relief an employee can seek against his or her statutory employer).

In sum, the laws of New Jersey provide that the subcontractor is primarily liable for workers' compensation; the general contractor is only secondarily liable. Immunity from a third-party tort claim is conferred only on the subcontractor, who as the employer is obligated to provide workers' compensation coverage, while the general contractor remains exposed to tort liability. In contrast, South Carolina renders both the general contractor and the subcontractor directly responsible for providing workers' compensation coverage, and in return immunizes both from tort liability. Therefore, in this case, under New Jersey law, the Egers could bring a third-party action in tort against Du Pont and Du Pont could not claim immunity, while under South Carolina law Du Pont as a statutory employer responsible for workers' compensation coverage could claim absolute immunity from this tort action.

## II.

Three decades ago, in *Wilson v. Faull*, 27 *N.J.* 105 (1958), this Court was confronted with an identical[2] conflict between

---

[2]Although the dissent attempts to distinguish *Wilson* on the grounds that the Pennsylvania statute at issue there did not explicitly provide general contractors the right to shift the burden of providing compensation onto its subcontractors, *see infra* at 146 (Stein, J., dissenting), it appears to have been common practice at the time for the subcontractors to assume this burden as part of the parties contractual relations. In such situations, both the general contractor and the subcontractor were immune from tort liability. *See, e.g.*

New Jersey and Pennsylvania workers' compensation laws. We held that a tort action by a New Jersey resident against his statutory employer, a general contractor required by Pennsylvania law to provide compensation coverage for subcontractors' employees at a Pennsylvania worksite, was barred by the exclusive remedy provision of the Pennsylvania workers' compensation statute. Arguing that *Wilson* represents a mechanical and outmoded approach to conflict of laws, plaintiffs urge this court to abandon the rule in *Wilson* and allow them to maintain their tort action against Du Pont.

In determining that the exclusive remedy provision of the Pennsylvania statute should be honored, the Court in *Wilson* stressed that it was rejecting the application of any mechanical rule to resolve the choice of law question:

> Choice of law in the situation presented here should not be governed by wholly fortuitous circumstances such as where the injury occurred, or where the contract of employment was executed, or where the parties resided or maintained their places of business, or any combination of these "contacts." Rather, it should be founded on broader considerations of basic compensation policy which the conflicting laws call into play, with a view toward achieving a certainty of result and effecting fairness between the parties within the framework of that policy. The injured workman has a prompt and practical compensation remedy in any state having a legitimate interest in his welfare. The person who provides that compensation in an interested state has a definitive liability which is predictable with some degree of accuracy and is granted an immunity from an employee's suit for damages which does not disappear whenever his enterprise chances to cross state lines and the suit is brought in another state. [27 *N.J.* at 124.]

The *Wilson* court, in determining the appropriate choice of law, was thus cognizant of the need to consider basic compensation policy and to provide fairness and certainty for the parties involved. Far from an inflexible application of the then-common *lex loci delecti* rule, the *Wilson* decision recognized the

---

*Capozzoli v. Stone & Webster Engineering Corp.,* 352 *Pa.* 183, 188, 42 *A.*2d 524, 526 (1945). In fact, the general contractor in *Wilson* itself was immunized despite the fact that the New Jersey subcontractor in that case paid the compensation award. Thus neither in *Wilson* or the case at hand did the general contractor bear the ultimate responsibility for providing compensation benefits.

interest of New Jersey in the application of its own law and actually approved of the application of the New Jersey statute to determine the level of compensation benefits to which the plaintiff there was entitled. *Wilson v. Faull, supra,* 27 *N.J.* at 116–17. It concluded, however, that Pennsylvania's interest in preserving the fundamental *quid pro quo* of workers' compensation—providing an expeditious and certain remedy for employees in return for a limitation on the employer's liability—dictated that Pennsylvania's immunization of statutory employers from tort liability should be honored.

The Court's decision in *Wilson* foreshadowed, if it did not fully comport with, contemporary choice of law doctrine in which the determinative law is that of the state with the greatest interest in governing the particular issue. *See, e.g., Veazey v. Doremus,* 103 *N.J.* 244, 248 (1986). As this Court noted in *Mellk v. Sarahson,* 49 *N.J.* 226 (1967), in which we explicitly adopted the governmental interest test, the *Wilson* court made its choice of law decision "only after full consideration of the policies and purposes of the rules of the states involved." *Id.* at 229. We remain satisfied that *Wilson* represents an accurate balancing of the interests involved.

### III.

We reach the same result in this case—to honor the exclusive remedy provision of a foreign state's workers' compensation statute—on a balancing of the governmental interests involved. South Carolina has a genuine and legitimate interest in protecting the welfare of persons working within its borders, affixing responsibility for that protection, regulating the safety of the workplace, and allocating the financial costs resulting from employment accidents. To address these governmental concerns, South Carolina, as part of its comprehensive workers' compensation scheme, has required that a general contractor assume the burden of furnishing workers' compensation coverage for the employees of its subcontractors as if they were in fact employees of its own. This imposition of liability furthers

South Carolina's interest in protecting the welfare of its workers by giving them the right to seek compensation benefits from either their immediate employer or the usually more fiscally responsible statutory employer, namely, the general contractor, *see Marchbanks v. Duke Power Co.*, 190 *S.C.* 336, 344, 2 *S.E.*2d 825, 828 (1939), thus providing a safeguard against the insolvency of either potential source of benefits. *Parker v. Williams & Madjanik, supra*, 275 *S.C.* at 72–74, 267 *S.E.*2d at 528.

Application of New Jersey law to allow a tort suit against a South Carolina general contractor such as Du Pont would undermine the foundation of that state's workers' compensation statute. Immunity from tort liability of a party obligated to provide compensation coverage is an essential element of the fundamental equation in every workers' compensation system: the statutorily imposed agreement in which an employer provides compensation coverage protecting employees injured in all work-related accidents without regard to fault in return for immunity from suit based on fault arising from such accidents. 2A A. Larson, *Workmen's Compensation Law* § 65.11 12–9 (1987). As one court has noted:

> The employer has incurred the burden of providing workmen's compensation insurance. The employee has foregone his right to sue the employer for negligence. But both have also gained. The employer has gained an immunity from common law suit. The employee has gained a right to relief even where his injury did not arise through the fault of his employer. The courts clearly consider that *this system of mutual give and take would be upset if the employee could sue for negligence in another jurisdiction.*
> [*Jonathan Woodner Co. v. Mather*, 210 *F.*2d 868, 873–74 (D.C.Cir.) (footnote omitted), *cert.* denied, 348 *U.S.* 824, 75 *S.Ct.* 39, 99 *L.Ed.* 650 (1954) *quoted in Wilson v. Faull*, 27 *N.J.* at 119 (emphasis added).]

Thus, the obligation to provide workers' compensation coverage and immunity from tort liability are linked in any integrated and comprehensive workers' compensation scheme. This is illustrated by New Jersey's variant scheme in which the general contractor is not required to provide compensation coverage, and is exposed to potential tort liability. Nevertheless, it can insulate itself from any liability for workers' compensation by

insisting that its subcontractors comply with their statutory obligation to carry workers' compensation insurance. In contrast, there is nothing a South Carolina general contractor can do to avoid primary liability for workers' compensation benefits. Therefore, subjecting a South Carolina general contractor to tort liability in addition to the expense of providing compensation coverage for all employment-related accidents would frustrate that state's interest in regulating the manner in which victims of industrial accidents are compensated.

The question remains whether New Jersey has any countervailing interest strong enough to warrant the imposition of tort liability under its law on a general contractor in situations where South Carolina has granted that general contractor immunity. Subjecting statutory employers such as Du Pont to tort claims by employees of subcontractors would have two possible consequences: it would allow plaintiffs to obtain additional damages beyond a workers' compensation award, and would permit the subcontractor to be reimbursed for any compensation benefits it has paid. New Jersey's interest in securing either of these consequences, however, is not strong enough to outweigh South Carolina's interest in immunizing general contractors required to provide workers' compensation coverage for subcontractors' employees from tort suits by those same employees. *See Jonathan Woodner Co. v. Mather, supra,* 210 *F.*2d at 873-74.

Turning first to the comparative importance of New Jersey's interest in encouraging added damage awards, the fact that plaintiffs in this case are protected by both Allstates' and Du Pont's compensation coverage and thus are assured of receiving compensation benefits plays a significant role in the weighing of governmental interests. In cases such as *Mellk v. Sarahson, supra,* 49 *N.J.* 226, and *Mullane v. Stavola,* 101 *N.J.Super.* 184 (Law Div.1968), in which courts refused to apply the host-immunity statutes of foreign states in lawsuits between New Jersey residents arising out of automobile accidents

occurring in foreign states, the courts disregarded the immunity recognized by the foreign states since those states had no real interest in having their law applied to New Jersey residents, whereas New Jersey had a great concern in seeing that its injured residents received compensation. *Mellk v. Sarahson, supra,* 49 *N.J.* at 233.

As illustrated by the prior discussion, however, South Carolina has a great interest in having other states recognize the tort immunity conferred on general contractors, since this immunity is part of the *quid pro quo* that is fundamental to South Carolina's workers' compensation system.[3] More importantly, New Jersey's interest in seeing that its injured residents receive compensation has not been neglected; it has been addressed through the workers' compensation system. Unlike the situation in *Mellk* in which the court was confronted with the choice of either allowing a tort remedy or denying such a remedy with the attendant risk of the uncompensated resident becoming a public charge as a result of the accident, an injured resident who is covered by workers' compensation is guaranteed payment of medical expenses and disability benefits for work-related accidents. His or her right to compensation does not depend on the inherently uncertain process of establishing tort liability. Therefore, workers' compensation, which was intended to prevent injured workers from becoming public charges by shifting to industry the expense of compensating work-related injuries, *see Boyle v. G & K Trucking Co.,* 37 *N.J.* 104, 112 (1962); *Morris v. Hermann Forwarding Co.,* 18 *N.J.* 195, 197–98 (1955), reasonably satisfies the state's interest in

---

[3]It also plays a role in regulating the structure of contractor/subcontractor relationships. South Carolina enacted its statutory employer provision in part to remove the incentive for contractors to place work with subcontractors with small numbers of employees that are not required by South Carolina law to provide workers' compensation coverage. *See Marchbanks v. Duke Power Co., supra,* 190 *S.C.* at 344, 2 *S.E.*2d at 828.

providing a source of compensation for injured workers.[4]  To the extent that a third party tort action would augment the employee's recovery, such a remedy is ancillary to the central goals of workers' compensation and is primarily for the benefit of the employee, *see United States Casualty Co. v. Hercules Powder Co.*, 4 *N.J.* 157, 165 (1950), only incidentally furthering any state interest. *See* 4 A. Larson, *Workmen's Compensation Law* § 88.14 16–145 (1987).

The second consequence of allowing a tort suit under New Jersey law is to provide a vehicle for the reimbursement of compensation paid by the employer.  Since an action for reimbursement of compensation expenses can be brought only in the name of the injured employee, *see N.J.S.A.* 34:15–40(f), denial of such a tort suit by recognition of Du Pont's immunity under South Carolina law will extinguish Allstates' right to seek reimbursement of any compensation it is ordered to pay plaintiffs.  Reimbursement from the proceeds of a tort award against a negligent third party, however, does not advance a significant state interest under the circumstances of this case.  As this court recently observed in *Midland Insurance Co. v. Colatrella*, 102 *N.J.* 612, 618 (1986), the primary concern of the Legislature in enacting the reimbursement provisions of *N.J.S. A.* 34:15–40 was to integrate all available sources of recovery in order to prevent double recovery on the part of an employee having both a statutory right to compensation and an action in tort against a third-party wrongdoer.  *See New Amsterdam Casualty Co. v. Popovich*, 18 *N.J.* 218, 226–27 (1955); *United States Casualty Ins. Co. v. Hercules Powder Co., supra,* 4 *N.J.*

---

[4]Moreover, to the extent that New Jersey's interest in providing adequate compensation to injured resident workers might be threatened by a foreign state's less generous compensation schedule, the injured employee retains the option of seeking compensation under the New Jersey statute.  This practice, which allows the employee to seek the highest available amount of compensation, is consonant with the remedial purposes underlying compensation enactments, *see Boyle v. G & K Trucking Co., supra,* 37 *N.J.* at 112, and in fact was followed in *Wilson v. Faull, supra,* 27 *N.J.* at 116–17, 124.

at 163 (discussing legislative history and intent of *N.J.S.A.* 34:15–40). Reallocation of the burden of providing compensation to reflect the relative fault of the contractors involved is at best an ancillary function of the workers' compensation statute.

Furthermore, in light of the fact that under South Carolina law a general contractor always has the right to seek indemnity for compensation expenses from an insured subcontractor, *S.C. Code* § 42–1–440, subcontractors such as Allstates are aware that they will be called on to bear the full burden of providing compensation coverage. Unlike the situation with regard to true third parties, however, a subcontractor and general contractor can adjust the terms of their contractual relationship to allocate the burden of providing compensation coverage. *See Parker v. Williams & Madjanik, supra*, 275 *S.C.* at 72–74, 267 *S.E.*2d at 528 ("As a practical matter [the general contractors] absorbed the cost of coverage through their contracts with those who agreed to actually perform the work."). New Jersey thus has no strong countervailing interest that would justify upsetting South Carolina's statutory scheme in order to do what the parties to the contract themselves have the capacity to do.

## IV.

South Carolina has a legitimate interest in the application and effectuation of its workers' compensation laws. This interest is not outweighed by any important New Jersey governmental interest that would be materially furthered by allowing plaintiffs to maintain their tort suit against Du Pont. Furthermore, the concern that led South Carolina to immunize general contractors, the necessity of preserving the fundamental *quid pro quo* of workers' compensation limiting the liability of a party that bears the expense of providing compensation coverage, is also reflected in the structure of our own workers' compensation system. The only relevant difference between the two states' laws is that South Carolina has extended the

benefits and burdens conferred on immediate employers by its workers' compensation statute to general contractors, in order to provide covered employees with a greater certainty of recovery.

Honoring the exclusive remedy provision of a foreign state's statute under the facts presented in this case reflects the majority approach today, *see* 4 A. Larson, *Workmen's Compensation Law, supra,* § 88.11 16–133 n. 13 (citing cases), and was the majority rule thirty years ago when it was endorsed by *Wilson.* The meritorious considerations favoring the *Wilson* rule remain persuasive. *See Restatement (Second) of Conflicts of Laws,* § 184 (1971) (adopting the outcome in *Wilson* as the choice of law rule in workers' compensation cases); 4 A. Larson, *Workmen's Compensation Law, supra,* § 88.13 16–141 (recognizing *Wilson* as the leading case on application of a foreign state's exclusive remedy provision).

For the reasons expressed above, the Court adheres to its decision in *Wilson.* Accordingly, the judgment of the Appellate Division is affirmed.

STEIN, J., dissenting.

I agree with the majority's preliminary observation that under the contemporary choice-of-law doctrine, "the determinative law is that of the state with the greatest interest in governing the particular issue." *Ante* at 140. In my view, however, South Carolina's interest in insulating a general contractor like Du Pont from tort liability is minimal. In comparison, New Jersey has a clear and compelling interest in providing redress, beyond the limited compensation made available through a workers' compensation award, to the survivors of a worker whose exposure to radioactivity in South Carolina caused him to contract leukemia, resulting in his death. I would modify *Wilson v. Faull,* 27 *N.J.* 105 (1958), reverse the judgment of the Appellate Division, and remand this matter for trial.

My difference with the majority's conclusion in this case is narrow but fundamental. The majority opinion observes that South Carolina has manifested its interest in providing a comprehensive system of workers' compensation by requiring that a general contractor, as well as an employee's direct employer, furnish workers' compensation coverage. In effect, this gives an employee the choice of proceeding against his own employer or against a general contractor that has engaged his employer. However, the general contractor is accorded by South Carolina law a claim-over against the primary employer for any benefits that the general contractor is required to pay. In return for this "backstop" function, South Carolina has elected to grant such general contractors an immunity from tort claims. *Ante* at 137–38.

In New Jersey, our Legislature has elected to mandate virtually the same "backstop" workers' compensation protection, but without immunizing a general contractor from third-party claims. Thus, general contractors are made liable for compensation benefits to employees of a subcontractor in the event the subcontractor has not secured workers' compensation insurance, and, as in South Carolina, are granted a right of reimbursement from the subcontractor. *N.J.S.A.* 34:15–79. Nevertheless, a general contractor, exposed to liability for workers' compensation benefits pursuant to the statute, has never been accorded immunity from tort liability. *See Boehm v. Witte*, 95 *N.J.Super.* 359 (Law Div.1967).

One might speculate about the wisdom of South Carolina's statutory scheme, which grants immunity to general contractors in return for what is in reality a "secondary" liability for compensation benefits. Under South Carolina law a general contractor would bear the actual cost of compensation benefits only if it were unable to secure reimbursement from the subcontractor. Such a legislative grant of immunity appears to confer a significant benefit to South Carolina general contractors in return for a relatively modest burden. The record in this case is barren of any evidence concerning the frequency

with which South Carolina general contractors are required to pay workers' compensation benefits and are subsequently unable to recover from the primary employer.

I would also note that in this case the statutory exposure of Du Pont, a Delaware corporation doing business in South Carolina, is highly theoretical. The injured worker lived in New Jersey, was employed by a New Jersey company, and thus understandably elected to prosecute his workers' compensation claim against his employer in New Jersey. No workers' compensation claim was filed in South Carolina. The record before us does not indicate the frequency with which the injured worker visited Du Pont's South Carolina plant, and there may be some question whether he could have maintained a workers' compensation action under South Carolina law. Even if such a claim against Du Pont had been asserted successfully in South Carolina, Du Pont would have a statutory right of reimbursement from Allstates, the worker's employer. Under these circumstances, Du Pont's contingent exposure to liability for workers' compensation benefits in South Carolina seems to fall considerably short of establishing a substantial state interest on the part of South Carolina in preserving Du Pont's immunity.

The contingent nature of defendant's statutory workers' compensation liability differentiates this case from *Wilson v. Faull* and that Court's balancing of interests. In *Wilson*, the defendant general contractor was, by Pennsylvania law, made the primary statutory employer, equivalent in all respects to New Jersey's treatment of immediate employers. *See* 27 *N.J.* 112–13, 121–23. Unlike South Carolina, Pennsylvania did not accord to a general contractor a statutory right of reimbursement from the direct employer.[1] As a matter of fundamental com-

---

[1] The majority suggests that this distinction between the Pennsylvania and South Carolina workers' compensation schemes is not significant because at the time of *Wilson* general contractors were able, by contract, to shift to subcontractors the burden of obtaining compensation insurance. *Ante* at 138

pensation policy, then, the *Wilson* Court considered the conflict of interests issue to be no different from that posed by third-party actions against out-of-state employers in states with workers' compensation statutes identical to the New Jersey statute:

> Since there is almost universal recognition of a sister state's grant of immunity to an immediate employer, who is required to provide compensation, that policy, from a choice of law viewpoint, should be equally applicable where the general contractor is effectively substituted for the immediate employer for compensation purposes, unless to do so would be contrary to the public policy of New Jersey. [*Id.* at 123.]

Here, South Carolina has not, in the same sense as has Pennsylvania, chosen to substitute its general contractors for the immediate employer, but, as explained, has instead imposed a secondary or contingent compensation liability on general contractors such as Du Pont. For purposes of interest analysis, Du Pont's immunity is more like a "gratuitous" immunity, bestowed by some states on co-employees or unrelated subcontractors, deserving far less respect in the conflicts of law context. *Cf.* 4 A. Larson, *Workmen's Compensation Law* § 88.21 at 16–149 (1987) (rationale of *Wilson v. Faull,* turning on potential threat to "central policy of compensation law," not relevant in cases involving non-employer third parties).

Hence, it is not at all apparent how the application of New Jersey law to allow this suit to be maintained against Du Pont would "undermine the foundation of that state's workers' compensation statute." *Ante* at 140. Such a decision would simply reflect New Jersey's determination that the immunity accorded to a general contractor under South Carolina's workers' compensation law is far less significant to the operation of that statute than is the immunity accorded to the primary employer. The fact that South Carolina has provided in its workers' compensation statutes for an expansive immunity that

---

n. 2. In my view, the ability to redistribute statutory rights and duties by private arrangement is not determinative of the importance to be accorded the state interest that underlies such statutory provisions.

includes parties other than the primary employer hardly compels the conclusion that that expansive immunity is fundamental to that state's workers' compensation system. The compensation systems of New Jersey and many other states apparently function adequately without according immunity to general contractors. For example, under Delaware law, the state of Du Pont's incorporation, no such immunity is accorded to a general contractor who may be contingently liable for an injured employee's workers' compensation benefits. *See Dickinson v. Eastern Railroad Builders, Inc.*, 403 *A.*2d 717 (Del.1979).

On the other side of the equation is New Jersey's clear interest in providing adequate compensation to an injured domiciliary. Although the majority expresses the view that that interest has been addressed through the workers' compensation system, it is well recognized that the workers' compensation system does not always provide adequate redress for injuries sustained by a worker. As this Court observed in *Lyon v. Barrett*, 89 *N.J.* 294 (1982):

> Good reason exists for preserving the right of an injured worker to sue a third person to the maximum extent that such actions are consistent with workers' compensation laws. The fixed dollar ceiling on benefits under the workers' compensation laws are the result of a trade-off of certain liability of the employer for reduced awards for the employee. Injured workers are entitled not only to recovery against employers under workers' compensation laws, but also against third parties under tort law. [*Id.* at 305 (citations omitted).]

In other choice-of-law contexts, courts have accorded substantial weight to New Jersey's governmental interest in securing adequate compensation for its residents from negligently inflicted injuries. *See Mellk v. Sarahson*, 49 *N.J.* 226, 231 (1967) (New Jersey's "strong * * * policy" of allowing recovery by injured guest for injuries caused by host-driver's negligence "is not diminished merely because accident occurred in another state"); *Schum v. Baily*, 578 *F.*2d 493, 496 (3rd Cir.1978) (applying New Jersey statute of limitations in malpractice claim arising in New York since "it is clear that New Jersey's strong interest in protecting compensation rights of its domiciliaries is implicated").

This case does not present the question whether New Jersey should ignore the immunity granted by a sister state's workers' compensation statute to the primary employer who bears the ultimate liability for compensation benefits. A refusal to recognize that immunity might severely impair the fabric of a sister state's compensation scheme. But South Carolina's interest in according immunity to a general contractor whose workers' compensation liability is secondary under South Carolina law should not be accorded any such significance. Whatever weight that immunity may have under South Carolina's statutory scheme should yield to New Jersey's compelling interest in providing its workers an opportunity to recover adequate compensation for negligently inflicted injuries.

Accordingly, I would reverse the judgment of the Appellate Division and remand the matter for a trial on the merits.

*For affirmance*—Chief Justice WILENTZ, and Justices HANDLER, POLLOCK, O'HERN and GARIBALDI—5.

*For reversal and remandment*—Justices CLIFFORD and STEIN—2.