[No. B135854. Second Dist., Div. Three. May 18, 2001.]

GINA TUCCI, Plaintiff and Appellant, v.
CLUB MEDITERRANEE, S.A., et al., Defendants and Respondents.

**COUNSEL**

Remer, DiVincenzo & Griffith, Franklin I. Remer and Joseph P. DiVincenzo for Plaintiff and Appellant.

Yukevich & Sonnett, Anthony E. Sonnett and Abdalla J. Innabi for Defendants and Respondents.

**OPINION**

**ALDRICH, J.—**

### INTRODUCTION

After she was injured while at work in the Dominican Republic, plaintiff Gina Tucci brought a personal injury action in California against her employer, defendant Club Med.[1] Once the case was at issue, the parties filed competing motions for summary judgment. In her motion, Tucci relied on the provision in the California workers' compensation law (Lab. Code, § 3200 et seq.)[2] allowing her to avoid the law's exclusivity to sue for damages in tort. Tucci claimed she was entitled to summary judgment on the issue of her employer's negligence. In its motion, Club Med acknowledged the jurisdiction of the California courts but contended that under applicable choice of law principles, the law of the Dominican Republic governed and precluded Tucci's tort action against her employer. Ruling that the law of the Dominican Republic applied, the trial court granted Club Med summary judgment and denied Tucci's motion. We conclude, pursuant to established choice of law principles, that the trial court was correct. Accordingly, we affirm the judgment.

---

[1]The named defendants are Club Mediterranee, S.A., Club Med, Inc., Club Med Management Services, Inc., and Club Mediterranee (Bahamas) Limited. For simplicity, we shall refer to defendants collectively as Club Med.

[2]Hereinafter, all statutory references shall be to division 4 of the Labor Code, the Workers' Compensation and Insurance Act, unless otherwise noted.

### FACTUAL AND PROCEDURAL BACKGROUND

The facts are undisputed. Tucci, a California resident, accepted by telephone the offer to work for four months as an aerobics instructor for the Club Med resort in Punta Cana, the Dominican Republic.

While at work in Punta Cana, Tucci injured her eye. On April 18, 1996, on her ride back from an eye doctor's office in Santo Domingo, in a truck owned by Club Med and driven by a Club Med employee, she suffered pelvic injuries. After being treated locally, she was airlifted to a United States hospital for further treatment.

Pursuant to Dominican Republic law, Club Med maintained workers' compensation insurance for its employees with AXA Courtage (a French insurance company). AXA Courtage is not authorized to write compensation insurance in California. Club Med had not secured a workers' compensation policy with an insurer licensed in California. AXA Courtage paid Tucci in excess of $110,000 in medical benefits. She rejected all additional benefits offered by Club Med and its insurer.

Tucci filed for benefits with the Workers' Compensation Appeals Board (WCAB), which action is not part of this lawsuit. Simultaneously, she brought this personal injury suit in superior court seeking declaratory relief and damages for breach of Club Med's statutory duty to carry workers' compensation according to California law, and for negligent operation, maintenance, and entrustment of a motor vehicle.

In due course, Tucci moved for summary judgment on the grounds, because she was a resident of California at the time of her injury and the employment contract was entered into in California, that she was entitled to workers' compensation benefits from California. She then asserted, because Club Med failed to carry a workers' compensation policy with an insurer "duly authorized [and licensed] to write compensation insurance in this state" (§ 3700, subd. (a); see § 5305), that she was entitled further to *avoid* the exclusivity of the workers' compensation law and sue Club Med in tort for damages (§ 3706, 3700, subd. (a)); see including attorney fees, and to invoke the applicable presumption of employer negligence.

Club Med opposed Tucci's motion and claimed its entitlement to summary judgment on the ground of an absolute defense. Rather than to contest jurisdiction, Club Med urged that choice of law principles required application of the law of the Dominican Republic whose workers' compensation and social security systems provided the exclusive remedy for Tucci's work-related injury.

The trial court granted Club Med's summary judgment motion and denied Tucci's motion. Applying California choice of law rules, the trial court concluded that Dominican Republic law governed this case. In particular, the court found while Club Med did not have a "California policy," as defined under the Labor Code, the AXA Courtage insurance policy provided Tucci "with proper coverage under *Dominican law*." (Italics added.) That is, the court noted, all medical treatment that plaintiff had undergone by the time of the judgment, totaling well over $110,000, was fully paid for by AXA Courtage pursuant to the worker's compensation policy purchased by Tucci's employer. The court noted that Tucci did not claim that her employer had failed to provide her coverage or that the benefits were inadequate. Rather, the court observed, Tucci's position was that she should be allowed to sue her employer for tort damages because Club Med did not purchase a *California* workers' compensation insurance policy. After all of her claims were dismissed, Tucci filed her appeal.

## DISCUSSION

1. *Standard of review.*

■ " ' "Summary judgment is granted when there is no triable issue as to any material fact and the moving party is entitled to judgment as a matter of law. [Citation.] We review the trial court's decision to grant [Club Med's] summary judgment de novo." [Citation.]' [Citation.] An appellate court is not bound by the trial court's stated reasons, if any, supporting its ruling; we review the ruling, not the rationale. [Citation.]" (*Prilliman v. United Air Lines, Inc.* (1997) 53 Cal.App.4th 935, 951 [62 Cal.Rptr.2d 142].) There being no dispute as to the operative facts here, the question is purely a legal one for us to resolve by de novo review. (*Ibid.*; Code Civ. Proc., § 437c.)

2. *Jurisdiction of the California courts is not at issue in this case.*

■ Initially, we address Tucci's contention that section 5305 requires application of California substantive law in this case. Section 5305 is a *jurisdictional* statute and has no impact on choice of law principles. That section declares the jurisdiction of the California Workers' Compensation Act and the WCAB over all controversies arising out of (1) injuries suffered outside California to employees who are residents of California at the time of the injury when (2) the employment contract was made in California. (§ 5305[3]; *Travelers Ins. Co. v. Workmen's Comp. App. Bd.* (1967) 68 Cal.2d 7, 11 [64 Cal.Rptr. 440, 434 P.2d 992], disapproved on another point in

---

[3]Section 5305 states: "The Division of Workers' Compensation, including the administrative director and the appeals board has jurisdiction over all controversies arising out of

*LeVesque v. Workmen's Comp. App. Bd.* (1970) 1 Cal.3d 627, 637 [83 Cal.Rptr. 208, 463 P.2d 432].) As a California resident who contracted in California for employment with Club Med, and who was injured in the course of her employment outside California, Tucci falls within the class of people whom "the Legislature intended to protect under the comprehensive California workmen's compensation statute." (*Travelers Ins. Co. v. Workmen's Comp. App. Bd.*, *supra*, 68 Cal.2d at p. 17.) There is thus no doubt that the *WCAB* has subject matter jurisdiction over Tucci's *workers' compensation claim* in California. (§ 5305.)[4] Tucci's right to *workers' compensation benefits*, however, is not at issue here; that is before the WCAB elsewhere.[5] The point here is that because it is a jurisdictional statute involving the WCAB and the Workers' Compensation Act, section 5305 does not determine whether California law or the Dominican Republic's rule of decision governs the substantive issues in an action for damages at common law. (§ 3209.)[6]

As contrasted with the claim for workers' compensation benefits, a California superior court does have both subject matter and personal jurisdiction over Tucci's common law action for damages. Club Med has submitted to the jurisdiction of the California courts over it. Once in a California forum,

---

injuries suffered outside the territorial limits of this state in those cases where the injured employee is a resident of this state at the time of the injury and the contract of hire was made in this state. Any employee described by this section, or his or her dependents, shall be entitled to the compensation or death benefits provided by this division."

[4]"[I]t is well established that an injured worker may obtain successive awards in different states, with total recovery limited to the amount of the higher award. [Citations.]" (*Garcia v. American Airlines, Inc.* (1st Cir. 1993) 12 F.3d 308, 309.) Hence, Tucci is not precluded from recovering a workers' compensation award in California, notwithstanding that she already recovered from AXA Courtage. (1 Herlick, Cal. Workers' Compensation Law (5th ed. 1996) § 13.01, pp. 13-3 to 13-4; *Thomas v. Washington Gas Light Co.* (1980) 448 U.S. 261, 285 [100 S.Ct. 2647, 2663, 65 L.Ed.2d 757]; *Dailey v. Dallas Carriers Corp.* (1996) 43 Cal.App.4th 720, 726 [51 Cal.Rptr.2d 48].) To avoid double recovery, any award made in California will take into account the payments Tucci received from AXA Courtage. (Weintraub, Commentary on the Conflict of Laws (3d ed. 1986) § 6.31, p. 359; 1 Herlick, Cal. Workers' Compensation Law, *supra*, § 13.01, p. 13-4; see also *Thomas v. Washington Gas Light Co.*, *supra*, at p. 281.)

[5]We only address the question of the WCAB's jurisdiction over Tucci's California workers' compensation benefits because she raises the issue as the first part of her two-part analysis. We cannot and do not address the substantive issues of whether Tucci is entitled to workers' compensation benefits and if so, the amount of the benefits, because those issues were brought separately before the WCAB. " '[T]he superior court cannot award workmen's compensation benefits, and the [WCAB] cannot award damages for injuries.' [Citation.] The only point of concurrent jurisdiction of the two [California] tribunals is jurisdiction to determine jurisdiction; jurisdiction once determined is exclusive, not concurrent. [Citation.]" (*La Jolla Beach & Tennis Club, Inc. v. Industrial Indemnity Co.* (1994) 9 Cal.4th 27, 35 [36 Cal.Rptr.2d 100, 884 P.2d 1048].)

[6]Section 3209 provides: " 'Damages' means the recovery allowed in an action at law as contrasted with compensation."

the question for our resolution is what rule of decision controls the substantive issues in this case. (See *Janzen v. Workers' Comp. Appeals Bd.* (1997) 61 Cal.App.4th 109, 115 [71 Cal.Rptr.2d 260].)

### 3. *Applicable legal principles and the parties' contentions.*

We turn then to an overview of the relevant principles of workers' compensation law. Nearly every workers' compensation statute in this country contains "an exclusive remedy provision" under which an employee who receives "an award of statutory benefits [is] foreclose[d from] any other type of compensation for the [work-related] injury, including damages in tort. [Citation.] Employees trade their tort remedies 'for a system of compensation without contest, thus sparing [them] the cost, delay and uncertainty of a claim in litigation.' [Citation.] Conversely, workers' compensation statutes typically allow a damages remedy against employers who fail to assume the statutory compensation burdens." (*Garcia v. American Airlines, Inc., supra,* 12 F.3d at p. 310, fn. omitted; *Huffman v. City of Poway* (2000) 84 Cal.App.4th 975, 987 [101 Cal.Rptr.2d 325].) The employer "who avoids sharing the burdens of the system is not entitled to enjoy its primary benefit, the immunity from non-statutory liability." (*Garcia v. American Airlines, Inc., supra,* 12 F.3d at p. 310.) This is the workers' compensation quid pro quo. (*Id.* at p. 311.)

This quid pro quo works thusly for a California resident injured elsewhere: An employee, who was *hired here* and who suffered accidental injury in the course of employment outside this state, is entitled to seek California workers' compensation *benefits.* (§ 3600.5, subd. (a).)[7] The injured employee may also avoid the workers' compensation exclusivity provision and seek damages at common law, against the employer who fails to assume the statutory burdens by "fail[ing] to *secure the payment of compensation.*" (§ 3706, italics added.)[8] As applicable here, employers obtain security for payment of compensation pursuant to section 3700, subdivision (a), by obtaining insurance through an insurer that is "*duly authorized to write compensation insurance in this state.*"[9] (Italics added.)

By contrast, the Dominican Republic's workers' compensation law provides the exclusive remedy for an employee injured there. The workers'

---

[7]Section 3600.5, subdivision (a) provides: "If an employee who has been hired or is regularly employed in the state receives personal injury by accident arising out of and in the course of such employment outside of this state, he or his dependents, in the case of his death, shall be entitled to compensation according to the law of this state."

[8]Section 3706 provides: "If any employer fails to secure the payment of compensation, any injured employee or his dependents may bring an action at law against such employer for damages, *as if this division did not apply.*" (Italics added.)

[9]Section 3700 reads in relevant part, "Every employer except the state shall secure the payment of compensation in one or more of the following ways: [¶] (a) By being insured

compensation insurer in the Dominican Republic is obligated, upon receipt of proof of an injury, to disburse funds irrespective of negligence. Additionally, all employees in the Dominican Republic have access to the state social security system, which operates as a pension plan and state-sponsored health care provider. Otherwise, employees in the Dominican Republic may *not* file a negligence action against the employer independent from an action to recover workers' compensation insurance. Punitive or exemplary damages are also unavailable to employees there.

■ Tucci's position is essentially, because she was hired in California and injured in the course of employment outside of this state, that California law governs and she is entitled to California's compensation benefits. Continuing, she argues, because Club Med was not insured by a company licensed to write insurance in California (§ 3700, subd. (a)), section 3706 allows her to avoid the workers' compensation exclusivity provision and to seek additional recovery in tort. Stated differently, even though she may obtain all California workers' compensation benefits that exceed her recovery under Dominican Republic law (see fn. 5, *ante*), Tucci aims additionally to render inapplicable the exclusivity of the California Workers' Compensation Act on the ground that AXA Courtage is not an insurance company "duly authorized to write compensation insurance in this state." (§ 3700, subd. (a).)

Club Med argues, under applicable choice of law rules, that the law of the Dominican Republic governs and prohibits Tucci from obtaining any recovery beyond worker's compensation benefits and that country's social security system.

Thus, our task is to determine which law applies.

### 4. *Conflict of laws analysis.*

■ When it is the forum, California resolves choice-of-law questions in disputes arising out of a tort using the "governmental interest analysis," which balances the interests of the involved states and parties. (*Offshore Rental Co. v. Continental Oil Co.* (1978) 22 Cal.3d 157, 161 [148 Cal.Rptr. 867, 583 P.2d 721] [applying Louisiana law in tort action].) "California applies its own rule of decision unless a party litigant properly invokes the law of a foreign state. A party advocating application of foreign law 'must demonstrate that the [foreign] rule of decision will further the interest of that foreign state and therefore that it is an appropriate one for the forum to apply

---

against liability to pay compensation in one or more insurers duly authorized to write compensation insurance in this state."

to the case before it.' [Citations.]" (*McGhee v. Arabian American Oil Co.* (9th Cir. 1989) 871 F.2d 1412, 1422.)

This governmental interest analysis involves three steps. (1) The court determines whether the foreign law differs from that of the forum. (2) If there is a difference, the court examines each jurisdiction's interest in the application of its own law to determine whether a "true conflict" exists. (*McGhee v. Arabian American Oil Co., supra,* 871 F.2d at p. 1422, citing *Offshore Rental Co. v. Continental Oil Co., supra,* 22 Cal.3d at pp. 161-162.) When both jurisdictions have a legitimate interest in the application of its rule of decision, (3) the court analyzes the " 'comparative impairment' of the interested jurisdictions." (*McGhee, supra,* 871 F.2d at p. 1422.) The court applies " ' "the law of the state whose interest would be the *more impaired if its law were not applied."* ' [Citations.]" (*Ibid.,* italics added, quoting from *Offshore Rental Co., supra,* 22 Cal.3d at p. 165.) With these rules in mind, we turn to a comparison of the laws of these two jurisdictions.

a. *The laws of California and the Dominican Republic differ.*

With respect to the exclusivity of workers' compensation, the laws of California and the Dominican Republic are clearly different. As explained above, under California law, when an employer is not insured by a company authorized to write insurance in California, the injured employee may obtain compensation benefits and also sue for damages in tort.[10] By contrast, an employee in the Dominican Republic may not file a negligence claim independent of an action to recover workers' compensation benefits.

b. *A true conflict exists between California's interests and those of the Dominican Republic.*

■■ Turning to the respective interests of California and the Dominican Republic in providing recovery under each state's laws, we conclude they are divergent, although both jurisdictions have recognized "substantial interests . . . in the welfare and subsistence of disabled workers." (*Thomas v. Washington Gas Light Co., supra,* 448 U.S. at p. 285 [100 S.Ct. at p. 2663].)

■■■■ California has clearly expressed its interest in swiftly compensating its own residents for work-related injuries (*State Comp. Ins. Fund v. Ind. Acc. Com.* (1942) 20 Cal.2d 264, 272 [125 P.2d 42]), in triggering industrial safety, encouraging employers to obtain adequate insurance, and in shifting the cost of injury onto the cost of goods rather than onto society.

---

[10]Any workers' compensation recovery will be credited against any damages recovery that an injured worker ultimately obtains against the employer in superior court. (§ 3709.)

(*S. G. Borello & Sons, Inc. v. Department of Industrial Relations* (1989) 48 Cal.3d 341, 354 [256 Cal.Rptr. 543, 769 P.2d 399].)[11] More important, California has a strong interest in assuring that its employers are adequately insured. (Cal. Const., art. XIV, § 4.)[12] The quid pro quo, above described, allowing an injured employee to avoid the workers' compensation exclusivity, provides an incentive for employers to secure adequate insurance. (§ 3602; *Huffman v. City of Poway, supra,* 84 Cal.App.4th at p. 987, quoting from *Hernandez v. Chavez Roofing Inc.* (1991) 235 Cal.App.3d 1092, 1095 [286 Cal.Rptr. 919]; *Rideaux v. Torgrimson, supra,* 12 Cal.2d at p. 637; cf. *Neighbours v. Buzz Oates Enterprises* (1990) 217 Cal.App.3d 325, 334 [265 Cal.Rptr. 788] [penalties for failure to insure are incentive to employer to secure payment of compensation].)

The Dominican Republic's interest in applying its laws lies not only in making certain (1) that workers are adequately insured for workplace injuries, as in California, but also in (2) assuring that businesses in that country face limited and predictable financial liability for work-related injuries, and in (3) predictably defining the duties and liabilities of an employer doing business within its borders, all with the goal of encouraging business investment and development there. The Dominican Republic has a particular interest in applying its law to incidents occurring within its borders, where claims are based largely on the alleged acts of the employer in that country. (Cf. *Offshore Rental Co. v. Continental Oil Co., supra,* 22 Cal.3d at p. 168 [finding this same interest to be "vital" to Louisiana].) In short, both of the jurisdictions have legitimate interests in applying their own laws.

c. *The Dominican Republic's interests will be more impaired by not applying its laws.*

We next look at whose interest would be most impaired if its law were not applied. "In workers' compensation law, the United States Supreme Court has long recognized that the state where an injury occurs, the state where an employment relationship is created, and the state where an injured employee resides all have the significant contacts necessary to justify application of

---

[11]The goals of California's Workers' Compensation Act are "(1) to ensure that the cost of industrial injuries will be part of the cost of goods rather than a burden on society, (2) to guarantee prompt, limited compensation for an employee's work injures, regardless of fault, as an inevitable cost of production, (3) to spur increased industrial safety, and (4) in return, to insulate the employer from tort liability for his employees' injuries. [Citations.]" (*S. G. Borello & Sons, Inc. v. Department of Industrial Relations, supra,* 48 Cal.3d at p. 354.)

[12]The California Constitution has granted the Legislature plenary power to establish "full provision for adequate insurance coverage against liability to pay or furnish compensation; full provision for regulating such insurance coverage in all of its aspects . . . [and] full provision for otherwise securing the payment of compensation . . . ." (Cal. Const., art. XIV, § 4; *Rideaux v. Torgrimson* (1939) 12 Cal.2d 633, 637 [86 P.2d 826].)

their own *workers' compensation laws.* [Citations.]" (*Dailey v. Dallas Carriers Corp., supra,* 43 Cal.App.4th at p. 726, italics added.) Hence, both the Dominican Republic where the injury occurred, and California where Tucci resides and the employment relationship was created, have sufficient connection to this case to justify Tucci's receipt of *workers' compensation benefits.*

However, California's interest in assuring that Tucci receive maximum *workers' compensation benefits* (*Travelers Ins. Co. v. Workmen's Comp. App. Bd., supra,* 68 Cal.2d at pp. 12-13) because she is a resident and the contract of hire was created here (§§ 5305, 3600.5), does not in and of itself justify applying California law to enable her to seek *additional recovery* in tort.

Applying California law to provide Tucci with a common law remedy would both contravene the quid pro quo around which American workers' compensation systems are designed (*Garcia v. American Airlines, Inc., supra,* 12 F.3d at p. 311), and defeat the Dominican Republic's policy of providing limited and predictable legal liability and financial responsibility for employers. Under the quid pro quo, "employees secure 'a practical and expeditious remedy for their industrial accidents,' [citation], while employers secure 'a limited and determinate liability,' [citation]. . . . [¶] . . . [¶] When a worker's second claim is for common-law damages rather than additional benefits, however, most states, on grounds of comity and policy, will respect the other jurisdiction's exclusive remedy provisions immunizing the employer from non-statutory liability. [Citations.] The rationale underlying this uniform treatment is compelling. The central purpose of compensation acts is 'to substitute a limited but certain remedy for the former remedy in tort—a compromise benefiting both employer and employee.' [Citations.] When an employee who has received benefits under such a compensation scheme later tries to get back into the common-law damage system, he is essentially un-doing this fundamental *quid pro quo.* [Citation.]" (*Garcia v. American Airlines, Inc., supra,* 12 F.3d at pp. 311-312.) Given that Tucci will receive all *compensation benefits* to which she may be entitled under either jurisdiction, and can also partake of the Dominican Republic's social security system's benefits, a holding allowing her also to sue for tort damages under California law would seriously undermine California's workers' compensation bargain and flout the guarantee of predictable and limited liability for Dominican Republic employers.

Moreover, application of California law would not advance the purpose of the section 3706 penalty provision. Tucci seeks to avail herself of the penalty of a common law damages action simply because Club Med was not insured by a company authorized to write insurance in California as required

by section 3700, subdivision (a). However, the objective of section 3700 appears to be to ensure that employers are adequately insured by a solvent company.[13] (Cal. State Federation of Labor, Rep. on Labor Legislation and Labor Record of Senators and Assemblymen, *supra*, at p. 9.) Tucci does not claim she was *inadequately* reimbursed. Nor can she given that AXA Courtage has paid all of her medical bills and she remains entitled to the Dominican Republic's social security system's benefits, and possibly any California benefits that exceed her Dominican Republic benefits. Therefore, California has little interest in penalizing Club Med for providing adequate workers' compensation through a solvent French, rather than Californian company.

*Reynolds Elec. etc. Co. v. Workmen's Comp. App. Bd.* (1966) 65 Cal.2d 429 [55 Cal.Rptr. 248, 421 P.2d 96], upon which Tucci relies, is hence distinguishable. There, the Nevada-based employer argued that application of California, as opposed to Nevada, workers' compensation law to a Californian injured in Nevada, would suggest that an employer must obtain insurance in every state from which it hires. The Supreme Court responded, "[t]he judicial function does not encompass evaluating the wisdom of provisions of the Labor Code making California compensation laws applicable to contracts of hire consummated in this state. This is a problem which, if significant, should more appropriately be addressed to the Legislature." (*Id.* at pp. 437-438.)[14] However, the argument in *Reynolds* was raised by a neighboring state's employer in an economy that was more local than global. More important, *Reynolds* involved the question of whether California law should apply to determine whether it has *jurisdiction* under section 5305 over a California resident who is injured elsewhere. *Reynolds* did not address whether, as here, the employee could subsequently avoid the exclusivity provision of workers' compensation as a penalty for the employer's failure to insure with a California company. Given the global economy extant,

---

[13]At oral argument, we requested that the parties submit additional briefing about the legislative history behind the requirement in subdivision (a) of section 3700, that employers obtain compensation with an insurer *"duly authorized to write compensation insurance in this state."* It appears from the legislative history of the section, that the motivation for the italicized language was the failure in 1916 of the Commonwealth Casualty Company that forced the state to shoulder the cost of that company's losses. (Cal. State Federation of Labor, Rep. on Labor Legislation and Labor Record of Senators and Assemblymen (42d Sess. 1917) p. 9.)

[14]*Travelers Ins. Co. v. Workmen's Comp. App. Bd.*, *supra*, 68 Cal.2d 7 and *Bowen v. Workers' Comp. Appeals Bd.* (1999) 73 Cal.App.4th 15 [86 Cal.Rptr.2d 95], upon which Tucci relies, are also distinguished on their facts. Both cases involve choice of law questions in determining whether the contract of hire was formed in California for purposes of invoking the *jurisdiction of the California WCAB* under section 5305. (*Travelers, supra*, 68 Cal.2d at p. 11; *Bowen v. Workers' Comp. Appeals Bd., supra*, 73 Cal.App.4th at p. 19.) Neither case addressed the issue we have resolved, namely what law should apply once the action has been removed from the workers' compensation sphere and is at common law.

California's interests would actually be protected by applying the Dominican Republic's ban on common law tort actions. Permitting a tort lawsuit against an international employer that does not obtain California-authorized insurance would place roadblocks to hiring qualified California employees, making it more difficult for California residents to obtain employment abroad.

The goals behind California's workers' compensation scheme would not be harmed by applying Dominican Republic law. The aims of the California system to encourage employers to obtain adequate insurance and to place the cost of injury on the cost of goods rather than on society (*S. G. Borello & Sons, Inc. v. Department of Industrial Relations, supra,* 48 Cal.3d at p. 354) are met here. Club Med *had* adequate insurance and the burden of this injury was assumed by it and not by the California public. Moreover, California's interest in making certain that California residents, such as Tucci, receive the maximum workers' compensation benefits allowed by law (*Travelers Ins. Co. v. Workmen's Comp. App. Bd., supra,* 68 Cal.2d at pp. 12-13; *Arno v. Club Med Inc.* (9th Cir. 1994) 22 F.3d 1464, 1468), is satisfied even if this state's laws are not applied because Tucci may seek all workers' compensation benefits afforded by California law that exceed those to which she is entitled in the Dominican Republic. California's interests would not be impaired if they were not applied.

Turning to the Dominican Republic's interests, its critical goal of fostering business investment and development, its legitimate interest in seeing that its law determines the consequences of actions within its borders causing injury to people there (*McGhee v. Arabian American Oil Co., supra,* 871 F.2d at pp. 1424-1425) and its interest in predictably and finally limiting liability predominate and would be significantly undermined if its laws were not applied. (See *Offshore Rental Co. v. Continental Oil Co., supra,* 22 Cal.3d at p. 168 [Louisiana's "vital interest in promoting freedom of investment . . . *within Louisiana's borders* . . . ." lies "at the heart of Louisiana's law"].) Our Supreme Court and the Ninth Circuit have both in the past resolved similar conflict of law questions by applying the law of the foreign jurisdiction where the conduct occurred causing injury there. (*Arno v. Club Med Inc., supra,* 22 F.3d at p. 1468; see also *Offshore Rental Co., supra,* at p. 168; *McGhee, supra,* at pp. 1425-1426.)

Finally, application of Dominican Republic's law to limit Tucci's recovery to workers' compensation benefits comports with California's long-held preference for workers' compensation exclusivity. █ "The rule of liberal construction [of the workers' compensation law] 'is not altered because a plaintiff believes that [she] can establish negligence on the part of [her] employer and brings a civil suit for damages.' [Citation.] It requires that we

liberally construe the [Workers' Compensation] Act 'in favor of *awarding work[ers'] compensation, not in permitting civil litigation.* [Citation.]' [Citations.]" (*Arriaga v. County of Alameda* (1995) 9 Cal.4th 1055, 1065 [40 Cal.Rptr.2d 116, 892 P.2d 150], italics added.)

On balance, California's interest will not be impaired if its laws do not govern, whereas the goals of the Dominican Republic's workers' compensation scheme will be greatly undermined if its laws are not applied in this case. This is especially true where Club Med was insured by a solvent company that paid Tucci all of her medical benefits, and she remains entitled to seek benefits under the Dominican social security system and is also pursuing any California workers' compensation benefits to which she may be entitled. Therefore, the trial court was correct, as a matter of law, in ruling that the law of the Dominican Republic governs the substantive issues of this case.

## DISPOSITION

The judgment is affirmed.

Klein, P. J., and Croskey, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 15, 2001. George, C. J., and Werdegar, J., did not participate therein.