Third Division
September 29, 2010

No. 1-09-2888

| | |
|---|---|
| MARIA MENDEZ, as Special Administrator for the Estate of Jaime Mendez, Deceased, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | |
| ATLANTIC PAINTING COMPANY, INC., | ) ) | 07 L 004317 |
| Defendant-Appellee and Third-Party Plaintiff, | ) ) | |
| (Eagle Painting and Maintenance Company, | ) ) | Honorable Kathy M. Flanagan, |
| Third-Party Defendant). | ) | Judge Presiding. |

JUSTICE NEVILLE delivered the opinion of the court:

In this case we must decide whether Kentucky law or Illinois law governs a lawsuit arising from the death in Kentucky of an Illinois resident working for an Illinois corporation. Jaime Mendez, an employee of Eagle Painting and Maintenance Co., died while working on a project Eagle undertook as a subcontractor of another Illinois corporation, Atlantic Painting Co. Jaime's widow, Maria Mendez, received workers' compensation under Illinois law. She sued Atlantic in Illinois for negligence. The trial court granted Atlantic's motion for summary judgment, holding that Kentucky's substantive law applied to the lawsuit and that Kentucky's law immunized Atlantic against Maria's lawsuit. Relying on section 184 of the Restatement (Second) of Conflict of Laws (1971), we too find

that Kentucky's substantive law applies to this cause of action. Accordingly, we affirm the order granting Atlantic's motion for summary judgment.

BACKGROUND

In June 2004, Atlantic and the Commonwealth of Kentucky signed a contract by which Kentucky agreed to pay Atlantic to paint and clean a bridge across the Ohio River. Atlantic then signed a contract, listing Atlantic as contractor and Eagle as subcontractor, with Eagle agreeing to perform part of the painting and cleaning on the bridge. On July 15, 2005, Jaime fell to his death from a platform from which he had painted part of the bridge. An arbitrator awarded Maria workers' compensation benefits of $700 per week for 20 years.

Maria, as administrator of Jaime's estate, sued Atlantic, charging that its negligence caused Jaime's death. Atlantic filed a motion for summary judgment, arguing that Kentucky law applied to the claim, and that the Kentucky's Workers' Compensation Act (Kentucky Act) (Ky. Rev. Stat. Ann. §342.690 (LexisNexis 2005)), gave Atlantic immunity from Maria's lawsuit. The parties presented depositions concerning the ties between the cause of action and Kentucky and Illinois. All work on the project took place in Kentucky. Eagle's employees all stayed either in Kentucky or across the river in Indiana while they worked on the project. Kentucky police and paramedics responded to the accident. Jaime lived in Illinois with his wife and three children. Atlantic and Eagle both had their principal offices in Illinois, and they signed their contract in Illinois. Most of Eagle's employees who worked on the project resided in Illinois.

The trial court found that Kentucky had more significant contacts with the accident, so Kentucky's substantive law applied to the cause of action. The court held that Atlantic qualified as

a contractor and Eagle as a subcontractor under the Kentucky Act and that the Act provided immunity for contractors like Atlantic, whose subcontractors paid a workers' compensation claim for injuries to an employee of the subcontractor. See Ky. Rev. Stat. Ann. §342.690 (LexisNexis 2005). The trial court entered an order that granted Atlantic's motion for summary judgment and Maria appeals.

ANALYSIS

Standard of Review

Reviewing courts review orders granting motions for summary judgment *de novo*. Hernandez v. Alexian Brothers Health System, 384 Ill. App. 3d 510, 519 (2008). Maria argues that the trial court erred when it applied Kentucky's substantive law rather than Illinois's substantive law to the facts of this case. We also review choice of law determinations *de novo*. Townsend v. Sears, Roebuck & Co., 227 Ill. 2d 147, 165 (2007).

Whether Kentucky Law Conflicts With Illinois Law

Before we analyze the issue of which state's law applies, we must determine whether Kentucky's law conflicts with Illinois law in any material way. Malatesta v. Mitsubishi Aircraft International, Inc., 275 Ill. App. 3d 370, 374 (1995). The laws conflict if the result we would reach under Kentucky's substantive law differs from the result we would reach under Illinois's substantive law. Malatesta, 275 Ill. App. 3d at 374.

Both Kentucky law and Illinois law make workers' compensation the employee's exclusive remedy against his employer. 820 ILCS 305/11 (West 2004); Hunter v. Southworth Products Corp., 333 Ill. App. 3d 158, 161 (2002); Ky. Rev. Stat. Ann. §342.690(1) (LexisNexis 2005). However,

Kentucky law extends this exclusive remedy protection to contractors when an employee of a subcontractor suffers injury. Ky. Rev. Stat. Ann. §342.690(1) (LexisNexis 2005); General Electric Co. v. Cain, 236 S.W.3d 579, 585 (Ky. 2007). Some courts call this provision in the Kentucky Act "up-the-ladder" immunity. See Cain, 236 S.W.3d at 607. Illinois law offers no such protection to contractors that hire subcontractors. See Gannon v. Chicago, Milwaukee, St. Paul & Pacific Ry. Co., 22 Ill. 2d 305, 322 (1961).

Maria contends that Atlantic does not qualify as a "contractor" for purposes of up-the-ladder immunity under the Kentucky Act. If Atlantic is not a contractor and up-the-ladder immunity does not protect it, then Kentucky law does not differ materially from Illinois law applicable to this case. The Kentucky Act defines a contractor as "[a] person who contracts with another *** [t]o have work performed of a kind which is a regular or recurrent part of the work of the trade, business, occupation, or profession of such person." Ky. Rev. Stat. Ann. §342.610(2)(b) (LexisNexis 2005). The Kentucky Supreme Court explained:

> "Work of a kind that is a 'regular or recurrent part of the work of the trade, business, occupation, or profession' of an owner does not mean work that is beneficial or incidental to the owner's business or that is necessary to enable the owner to continue in business, improve or expand its business, or remain or become more competitive in the market. [Citation.] It is work that is customary, usual, or normal to the particular business (including work assumed by contract or required by law) or work that the business repeats with some degree of regularity, and it is of a kind that the business or similar businesses would normally perform or be expected to perform

with employees." Cain, 236 S.W.3d at 588.

Atlantic contracted with Eagle to have Eagle help with painting the bridge. Atlantic painted bridges and other public works in the course of its usual business. While the Kentucky bridge project exceeded the scope of Atlantic's prior work, it did not differ from the kind of work Atlantic did in the past. Because Atlantic hired Eagle to perform "work that is customary, usual, or normal" to Atlantic's usual business, Atlantic counts as a contractor and Eagle as a subcontractor for purposes of the Kentucky Act. While Maria could sue Atlantic for negligence under Illinois law, the Kentucky Act makes workers' compensation Maria's sole remedy against Atlantic. Ky. Rev. Stat. Ann. §342.610(2)(b) (LexisNexis 2005). Accordingly, we find that Illinois law conflicts with Kentucky law as applied to this case.

Restatement (Second) of Conflict of Laws Section184

Maria contends that the trial court should have applied Illinois substantive law to this case because Illinois has a more significant relationship with this dispute and, therefore, section 145 of the Restatement (Second) of Conflict of Laws requires application of Illinois law. However, we find that section 184 of the Restatement applies more closely to the facts of this case. See Palmer v. Freightliner, LLC, 383 Ill. App. 3d 57, 63 (2008) (citing section 184 of the Restatement (Second) of Conflict of Laws as applicable law). Section 184 provides:

> "Recovery for tort or wrongful death will not be permitted in any state if the
> defendant is declared immune from such liability by the workmen's compensation
> statute of a state under which the defendant is required to provide insurance against
> the particular risk and under which

(a) the plaintiff has obtained an award for the injury, or

(b) the plaintiff could obtain an award for the injury, if this is the state (1) where the injury occurred, or (2) where employment is principally located, or (3) where the employer supervised the employee's activities from a place of business in the state, or (4) whose local law governs the contract of employment." Restatement (Second) of Conflict of Laws §184 (1971).

The Kentucky Act requires all employers of employees working in Kentucky to compensate their employees for injuries they suffer at work. Ky. Rev. Stat. Ann. §§342.610, 342.630, 342.640 (LexisNexis 2005). The Kentucky Act applies to out-of-state employers of employees who reside outside Kentucky. Bryant v. Jericol Mining, Inc., 758 S.W.2d 45, 46-47 (Ky. App. 1988). Because Eagle employed Jaime to work on the bridge in Kentucky, Eagle qualifies as an employer subject to the Kentucky Act. See Davis v. Turner, 519 S.W.2d 820, 822 (Ky. 1975).

The Kentucky Act further requires all contractors to compensate injured employees of their subcontractors if the subcontractors prove unable to pay the requisite compensation. Ky. Rev. Stat. Ann. 342.610(2) (LexisNexis 2005). Thus, the Kentucky Act required Atlantic to provide workers' compensation coverage for any of Eagle's employees injured in Kentucky while working with Eagle for Atlantic. Under the Kentucky Act, Atlantic, like Eagle, was an entity "required to provide insurance against the particular risk" of injury to Eagle's employees, within the meaning of section 184 of the Restatement. Restatement (Second) of Conflict of Laws §184 (1971).

Maria did not obtain an award for the injury under the Kentucky Act; instead, she proceeded under the Illinois Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 2004)). However,

Maria could have obtained an award under the Kentucky Act. See Bryant, 758 S.W.2d at 46-47 (Kentucky Act covers out-of-state employee working for out-of-state employer, if injury occurs during work in Kentucky). And the injury here occurred in Kentucky. Therefore, under section 184, "[r]ecovery for tort or wrongful death will not be permitted in any state if the defendant is declared immune from such liability by the workmen's compensation statute" of Kentucky. Restatement (Second) of Conflict of Laws §184 (1971). Because the Kentucky Act makes Atlantic responsible for providing workers' compensation coverage for employees of its subcontractors, and because the Kentucky Act immunizes Atlantic from lawsuits in tort brought by those employees of subcontractors, Maria's lawsuit for injuries to Jaime must fail. Accordingly, the trial court correctly entered summary judgment in favor of Atlantic.

Restatement (Second) of Conflict of Laws Section 145

While we find that section 184 of the Restatement most directly applies to this case, we note that we would reach the same result under section 145 of the Restatement. Section 145 provides that a court deciding a choice-of-law issue should apply the law of the state with "the most significant relationship to the occurrence and the parties." Restatement (Second) of Conflict of Laws §145(1)(1971). In determining which state has the most significant relationship to the case, the court should consider:

> "(a) the place where the injury occurred,
>
> (b) the place where the conduct causing the injury occurred,
>
> (c) the domicil, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered."

Restatement (Second) of Conflict of Laws §145(2) (1971).

Section 145 specifies that "[t]hese contacts are to be evaluated according to their relative importance with respect to the particular issue." Restatement (Second) of Conflict of Laws §145(2) (1971).

Here, the injury occurred in Kentucky. Maria alleged that Atlantic caused the injury by failing to erect a proper scaffold, by failing to provide a working safety harness, by negligently inspecting the work site, by failing to supervise the work site properly, and by failing to train Jaime adequately on proper methods for working on an elevated platform. All of the alleged misconduct would have occurred only in Kentucky, except for the training, which could have occurred in either Illinois or Kentucky. Jaime resided in Illinois and Atlantic had its principal place of business in Illinois, where it is incorporated. The relationship between the parties centered in Illinois, because Atlantic negotiated and signed its contract with Eagle, an Illinois corporation, in Illinois, and Eagle hired Jaime, an Illinois resident, in Illinois.

According to our supreme court, "the local law of the State where the injury occurred should determine the rights and liabilities of the parties, unless Illinois has a more significant relationship with the occurrence and with the parties." Ingersoll v. Klein, 46 Ill. 2d 42, 45 (1970). Our supreme court adopted a federal court's explanation for this preference:

" '[I]n the absence of unusual circumstances, the highest scorer on the "most significant relationship" test is— the place where the tort occurred. [Citations.] For that is the place that has the greatest interest in striking a reasonable balance among safety, cost, and other factors pertinent to the design and administration of a system

of tort law.' " Townsend, 227 Ill. 2d at 165, quoting Spinozzi v. ITT Sheraton Corp., 174 F.3d 842, 844-45 (7th Cir.1999).

The preference takes on special significance when the injured person has recovered workers' compensation. "[T]o deny a person the immunity granted him by a workmen's compensation statute of a given state would frustrate the efforts of that state [1] to restrict the cost of industrial accidents and [2] to afford a fair basis for predicting what these costs will be." Restatement (Second) of Conflict of Laws §184, Comment b (1971).

The New Jersey Supreme Court explained the relevant policy considerations in Eger v. E.I. Du Pont DeNemours Co., 110 N.J. 133, 539 A.2d 1213 (1988). In Eger, a general contractor in South Carolina subcontracted some of its work to a New Jersey corporation and that corporation sent its employee, Eger, to South Carolina to work on the project. Eger suffered severe injuries while working in South Carolina. Eger received workers' compensation under the New Jersey statute. Eger then brought a tort lawsuit in New Jersey against the general contractor. South Carolina law, like Kentucky law, provided up-the-ladder immunity for the general contractor; New Jersey law, like Illinois law, did not. Eger, 110 N.J. at 137-38, 539 A.2d at 1215-16. The Eger court held:

"South Carolina has a genuine and legitimate interest in protecting the welfare of persons working within its borders, affixing responsibility for that protection, regulating the safety of the workplace, and allocating the financial costs resulting from employment accidents. To address these governmental concerns, South Carolina, as part of its comprehensive workers' compensation scheme, has required that a general contractor assume the burden of furnishing workers' compensation coverage for the

employees of its subcontractors as if they were in fact employees of its own. This imposition of liability furthers South Carolina's interest in protecting the welfare of its workers by giving them the right to seek compensation benefits from either their immediate employer or the usually more fiscally responsible statutory employer, namely, the general contractor, [citation], thus providing a safeguard against the insolvency of either potential source of benefits. [Citation.]

Application of New Jersey law to allow a tort suit against a South Carolina general contractor *** would undermine the foundation of that state's workers' compensation statute. Immunity from tort liability of a party obligated to provide compensation coverage is an essential element of the fundamental equation in every workers' compensation system: the statutorily imposed agreement in which an employer provides compensation coverage protecting employees injured in all work-related accidents without regard to fault in return for immunity from suit based on fault arising from such accidents. ***

* * *

*** [T]he concern that led South Carolina to immunize general contractors, the necessity of preserving the fundamental *quid pro quo* of workers' compensation limiting the liability of a party that bears the expense of providing compensation coverage, is also reflected in the structure of our own workers' compensation system. The only relevant difference between the two states' laws is that South Carolina has extended the benefits and burdens conferred on immediate employers by its workers'

compensation statute to general contractors, in order to provide covered employees with a greater certainty of recovery." Eger, 110 N.J. at 140-46, 539 A.2d at 1217-20. The New Jersey Supreme Court affirmed the trial court's decision granting summary judgment in favor of the South Carolina general contractor.

A California court reached a similar conclusion in Tucci v. Club Mediterranee, S.A., 89 Cal. App. 4th 180, 107 Cal. Rptr. 2d 401 (2001). In that case Tucci, a California resident, sustained injuries while working at a job in the Dominican Republic. The court noted that California had a strong interest in swiftly compensating its residents for work-related injuries and improving industrial safety. Tucci, 89 Cal. App. 4th at 189-90, 107 Cal. Rptr. 2d at 408. The Tucci court held:

"The Dominican Republic's interest in applying its laws lies not only in making certain (1) that workers are adequately insured for workplace injuries, as in California, but also in (2) assuring that businesses in that country face limited and predictable financial liability for work-related injuries, and in (3) predictably defining the duties and liabilities of an employer doing business within its borders, all with the goal of encouraging business investment and development there. The Dominican Republic has a particular interest in applying its law to incidents occurring within its borders, where claims are based largely on the alleged acts of the employer in that country. \*\*\*

\*\*\* [B]oth the Dominican Republic where the injury occurred, and California where Tucci resides and the employment relationship was created, have sufficient connection to this case to justify Tucci's receipt of *workers' compensation benefits*.

However, California's interest in assuring that Tucci receive maximum

*workers' compensation benefits* [citation] because she is a resident and the contract of hire was created here [citation], does not in and of itself justify applying California law to enable her to seek *additional recovery* in tort.

Applying California law to provide Tucci with a common law remedy would both contravene the quid pro quo around which American workers' compensation systems are designed [citation], and defeat the Dominican Republic's policy of providing limited and predictable legal liability and financial responsibility for employers." (Emphasis in original.) Tucci, 89 Cal. App. 4th at 190-91, 107 Cal. Rptr. 2d at 408-09.

We have found one workers' compensation case the parties did not cite in which the court applied the law of the state of employment rather than the law of the state in which the accident occurred. In Simaitis v. Flood, 182 Conn. 24, 437 A.2d 828 (1980), a Connecticut corporation sent its employee, a Connecticut resident, to work in Tennessee, where her car collided with a car driven by a coworker when both were working. The employee recovered workers' compensation under Connecticut law, and she sued her coworker for negligent driving. Tennessee law did not permit an employee to sue a coworker in negligence for injuries sustained at work. Simaitis, 182 Conn. at 27, 437 A.2d at 830. Connecticut law permitted such a lawsuit. Simaitis, 182 Conn. at 27, 437 A.2d at 830.

The court acknowledged that both Connecticut and Tennessee had sufficient interest in the incident for workers' compensation from either state to apply. Simaitis, 182 Conn. at 32-33, 437 A.2d at 832. The Simaitis court held:

"Tennessee's interest in limiting the liability of employers doing business in Tennessee is 'not of controlling importance.' *** Tennessee has no legitimate interest in preventing Connecticut from providing the injured employee with a right of action for damages against a third party, particularly where both the employee and the alleged tortfeasor are Connecticut residents, the employer is a Connecticut corporation and the employee was hired and is principally employed in Connecticut.

       ***

According to Professor Larson, the applicable law in a workers' compensation case is the law of the place of the employment relation, because 'the existence of the employer-employee relation within the state gives the state an interest in controlling the incidents of that relation, one of which incidents is the right to receive and the obligation to pay compensation.' [Citation.] There is no question that the employment relation in this case exists in Connecticut, not in Tennessee. For all of the foregoing reasons, the right of action provided by the Connecticut Workers' Compensation Act cannot be denied the plaintiff by Tennessee law." Simaitis, 182 Conn. at 32-34, 437 A.2d at 832-33, quoting Thomas v. Washington Gas Light Co., 448 U.S. 261, 280, 65 L. Ed. 2d 757, 772, 100 S. Ct. 2647, 2660 (1980), and 4 Larson, Workmen's Compensation Law §87.40, at 16-84.

We find Simaitis distinguishable from our case, because the alleged tortfeasor in Simaitis had not employed the plaintiff and had not purchased workers' compensation insurance. Eger and Tucci have greater factual similarity to the instant case, where Atlantic, as an up-the-ladder employer of

Jaime, bore responsibility for providing workers' compensation insurance coverage for his injuries. Kentucky has a substantial interest in making liability for work-related injuries limited and predictable when the injuries occur while work is being done in Kentucky. Illinois has a substantial interest in seeing that Illinois employers provide workers' compensation to injured employees who are Illinois residents, but Kentucky also has a substantial interest in applying its workers' compensation laws to any work-related accidents occurring in Kentucky. We find that Kentucky has more significant contacts with the accident that occurred in this case. We find that section 145 of the Restatement (Second) of Conflict of Laws, like section 184 of the Restatement, demands application of Kentucky's substantive law to the facts of this case. Therefore, because the Kentucky Act immunized Atlantic from this lawsuit, brought in tort for the wrongful death in Kentucky of an employee of Atlantic's subcontractor, the trial court correctly granted Atlantic's motion for summary judgment.

CONCLUSION

Illinois's substantive law conflicts with Kentucky's substantive law in this case because Illinois law would permit Maria to proceed with her lawsuit charging Atlantic, the contractor, with negligence, while Kentucky law would bar Maria's lawsuit. Section 184 of the Restatement, which pertains to cases in which workers' compensation insurance covers an injured employee, governs our decision as to which law to apply. Under the Kentucky Act, Atlantic, as a contractor, bore responsibility for providing workers' compensation coverage for its subcontractor's employees, and Maria could have received a workers' compensation award from Kentucky. Therefore, under section 184, the Kentucky Act immunizes Atlantic against lawsuits to recover for injuries to any of its subcontractors' employees. If this court were to apply section 145 of the Restatement, we would

- 14 -

reach the same result. Kentucky has a substantial interest in ensuring speedy recovery for workers injured in the state and in making liability of employers for work-related injuries both predictable and limited. Kentucky's interests make its contacts with this case more significant than Illinois's contacts. Therefore, we affirm the trial court's order granting Atlantic's motion for summary judgment.

Affirmed.

MURPHY and STEELE, JJ., concur.